# EXHIBIT A

# EXHIBIT A



CNA Plaza
Chicago, IL 60685

HEALTHCARE PROVIDERS
SERVICE ORGANIZATION
PURCHASING GROUP

**CERTIFICATE OF INSURANCE**

OCCURRENCE POLICY FORM



Print Date: 03/11/2009

| Producer | Branch | Prefix | Policy Number | Policy Period |
|----------|--------|--------|---------------|---------------|
| 018098 | 970 | HPG | 0253740525 | From: 12:01 A.M. Standard Time on: 10/15/04 |
| | | | | To: 12:01 A.M. Standard Time on: 10/15/05 |

**Named Insured and Address:**
Mary R Grear
329 Fuente Dr
Henderson, NV 89014-5100

Medical Specialty:
Pharmacist

Code:
59112

**Program Administrator:**
Healthcare Providers Service Organization
159 East County Line Road
Hatboro, PA 19040

**Insurance Provided by:**
American Casualty Company of Reading, Pennsylvania
CNA Plaza 26S     Chicago, IL  60685

| COVERAGE PARTS | | LIMITS OF LIABILITY | |
|----------------|--|--------------------|--|
| **A.   PROFESSIONAL LIABILITY:** | | | |
| Professional Liability (PL) | $ 1,000,000   each claim | $ 6,000,000   aggregate | |
| Good Samaritan Liability | included above | | |
| Personal Injury Liability | included above | | |
| Malplacement Liability | included above | | |
| **B.   COVERAGE EXTENSIONS:** | | | |
| License Protection | $ 10,000   per proceeding | $ 25,000   aggregate | |
| Defendant Expense Benefit | | $ 10,000   aggregate | |
| Deposition Representation | $ 2,500   per deposition | $ 5,000   aggregate | |
| Assault | $ 10,000   per incident | $ 25,000   aggregate | |
| Medical Payments | $ 2,000   per person | $ 100,000   aggregate | |
| First Aid | | $ 2,500   aggregate | |
| Damage to Property of Others | $ 500   per incident | $ 10,000   aggregate | |

**C.   WORKPLACE LIABILITY**   Coverage part C. Workplace Liablity does not apply if Coverage part D. General Liability is made part of this policy.

| | |
|--|--|
| Workplace Liability | included in A. PL limit shown above |
| Fire & Water Legal Liability | included in A. PL limit shown above subject to a $ 150,000 sub-limit |
| Personal Liability | $ 1,000,000 aggregate |

**D.   GENERAL LIABILITY**   Coverage part D.General Liablity does not apply if Coverage part C. Workplace Liability is made part of this policy.

| | | | |
|--|--|--|--|
| General Liability (GL) | None | None | |
| Hired Auto & Non Owned Auto | None | | |
| Fire & Water Legal Liability | None | None | |
| Personal Liability | | None | |

| Total Premium $ 311.00 | Questions? CALL: 1-800-982-9491 |
|------------------------|--------------------------------|

**Policy forms and endorsements attached at inception:**

G-121500-C     G-121501-C     G-121503-C     G-147292-A     G-145184-A     G-144872-A     G-123846-C27

G-123816-C27

Master Policy #  188711433

Keep this document in a safe place.  It and proof payment are evidence of your insurance coverage

Chairman of the Board

Secretary

G-141241-A(07/2001)                    Coverage Change Date:                    Endorsement Change Date:



**CNA**
CNA Plaza
Chicago, IL 60685

HEALTHCARE PROVIDERS
SERVICE ORGANIZATION
PURCHASING GROUP
**CERTIFICATE OF INSURANCE**
OCCURRENCE POLICY FORM



Print Date: 03/11/2009

| Producer | Branch | Prefix | Policy Number | Policy Period | |
|---|---|---|---|---|---|
| 018098 | 970 | HPG | 0253740525 | From: 12:01 A.M. Standard Time on: | 10/15/05 |
| | | | | To : 12:01 A.M. Standard Time on: | 10/15/06 |

| Named Insured and Address: | Program Administrator: |
|---|---|
| Mary R Grear<br>3462 Shamrock Ave<br>Las Vegas, NV 89120-1261 | Healthcare Providers Service Organization<br>159 East County Line Road<br>Hatboro, PA 19040 |
| Medical Specialty:               Code:<br>Pharmacist                          59112 | Insurance Provided by:<br>American Casualty Company of Reading, Pennsylvania<br>CNA Plaza 26S     Chicago, IL  60685 |

| COVERAGE PARTS | LIMITS OF LIABILITY | | | |
|---|---|---|---|---|
| **A.   PROFESSIONAL LIABILITY:** | | | | |
| Professional Liability (PL) | $ 1,000,000 | each claim | $ 6,000,000 | aggregate |
| Good Samaritan Liability | included above | | | |
| Personal Injury Liability | included above | | | |
| Malplacement Liability | included above | | | |
| **B.   COVERAGE EXTENSIONS:** | | | | |
| License Protection | $ 10,000 | per proceeding | $ 25,000 | aggregate |
| Defendant Expense Benefit | | | $ 10,000 | aggregate |
| Deposition Representation | $ 2,500 | per deposition | $ 5,000 | aggregate |
| Assault | $ 10,000 | per incident | $ 25,000 | aggregate |
| Medical Payments | $ 2,000 | per person | $ 100,000 | aggregate |
| First Aid | | | $ 2,500 | aggregate |
| Damage to Property of Others | $ 500 | per incident | $ 10,000 | aggregate |
| **C.   WORKPLACE LIABILITY**   Coverage part C. Workplace Liability does not apply if Coverage part D. General Liability is made part of this policy. | | | | |
| Workplace Liability | included in A. PL limit shown above | | | |
| Fire & Water Legal Liability | included in A. PL limit shown above subject to a $ 150,000 sub-limit | | | |
| Personal Liability | | | $ 1,000,000 aggregate | |
| **D.   GENERAL LIABILITY**   Coverage part D.General Liability does not apply if Coverage part C. Workplace Liability is made part of this policy. | | | | |
| General Liability (GL) | None | | None | |
| Hired Auto & Non Owned Auto | None | | | |
| Fire & Water Legal Liability | None | | None | |
| Personal Liability | | | None | |

| **Total Premium** $ 311.00 | **Questions? CALL: 1-800-982-9491** |
|---|---|

**Policy forms and endorsements attached at inception:**

G-121500-C     G-121501-C     G-121503-C     G-147292-A     G-145184-A     G-144872-A     G-123846-C27

G-123816-C27

Master Policy #  188711433

Keep this document in a safe place.  It and proof payment are evidence of your insurance coverage

**Chairman of the Board**                    **Secretary**

G-141241-A(07/2001)          Coverage Change Date:                    Endorsement Change Date:



**CNA**

CNA Plaza
Chicago, IL 60685

HEALTHCARE PROVIDERS
SERVICE ORGANIZATION
PURCHASING GROUP

**CERTIFICATE OF INSURANCE**

OCCURRENCE POLICY FORM



Healthcare Providers Service Organization™

Print Date: 03/11/2009

| Producer | Branch | Prefix | Policy Number | Policy Period |
|---|---|---|---|---|
| 018098 | 970 | HPG | 0253740525 | From: 12:01 A.M. Standard Time on: 10/15/06 |
| | | | | To : 12:01 A.M. Standard Time on: 10/15/07 |

**Named Insured and Address:**
Mary R Grear
3462 Shamrock Ave
Las Vegas, NV 89120-1261

Medical Specialty:
Pharmacist

Code:
59112

**Program Administrator:**
Healthcare Providers Service Organization
159 East County Line Road
Hatboro, PA 19040

**Insurance Provided by:**
American Casualty Company of Reading, Pennsylvania
CNA Plaza 26S     Chicago, IL  60685

## COVERAGE PARTS

| | LIMITS OF LIABILITY | | | |
|---|---|---|---|---|
| **A.   PROFESSIONAL LIABILITY:** | | | | |
| Professional Liability (PL) | $ 1,000,000 | each claim | $ 3,000,000 | aggregate |
| Good Samaritan Liability | | included above | | |
| Personal Injury Liability | | included above | | |
| Malplacement Liability | | included above | | |
| **B.   COVERAGE EXTENSIONS:** | | | | |
| License Protection | $ 10,000 | per proceeding | $ 25,000 | aggregate |
| Defendant Expense Benefit | | | $ 10,000 | aggregate |
| Deposition Representation | $ 2,500 | per deposition | $ 5,000 | aggregate |
| Assault | $ 10,000 | per incident | $ 25,000 | aggregate |
| Medical Payments | $ 2,000 | per person | $ 100,000 | aggregate |
| First Aid | | | $ 2,500 | aggregate |
| Damage to Property of Others | $ 500 | per incident | $ 10,000 | aggregate |

**C.   WORKPLACE LIABILITY**   Coverage part C. Workplace Liability does not apply if Coverage part D. General Liability is made part of this policy.

| | |
|---|---|
| Workplace Liability | included in A. PL limit shown above |
| Fire & Water Legal Liability | included in A. PL limit shown above subject to a $ 150,000 sub-limit |
| Personal Liability | $ 1,000,000 aggregate |

**D.   GENERAL LIABILITY**   Coverage part D.General Liability does not apply if Coverage part C. Workplace Liability is made part of this policy.

| | | |
|---|---|---|
| General Liability (GL) | None | None |
| Hired Auto & Non Owned Auto | None | |
| Fire & Water Legal Liability | None | None |
| Personal Liability | | None |

**Total Premium** $ 374.00                          **Questions? CALL: 1-800-982-9491**

**Policy forms and endorsements attached at inception**

G-121500-C      G-121501-C      G-121503-C      G-147292-A      G-145184-A      G-144872-A      G-123846-C27

G-123816-C27

Master Policy #  188711433

Keep this document in a safe place.  It and proof payment are evidence of your insurance coverage

_Chairman of the Board_

_Secretary_

G-141241-A(07/2001)                    Coverage Change Date:                    Endorsement Change Date:



**HEALTHCARE PROVIDERS**
**SERVICE ORGANIZATION**
**PURCHASING GROUP**
**CERTIFICATE OF INSURANCE**
**OCCURRENCE POLICY FORM**

Print Date:  06/26/08

| Producer | Branch | Prefix | Policy Number | Policy Period |
|---|---|---|---|---|
| 018098 | 970 | HPG | 0253740525 | from: 12:01 AM Standard Time on: 10/15/07<br>to:   12:01 AM Standard Time on: 10/15/08 |

**Named Insured and Address:**

Mary R Grear
3462 Shamrock Ave
Las Vegas, NV  89120-1261

Medical Specialty:
Pharmacist                         Code: 59112

**Program Administrator:**

Healthcare Providers Service Organization
159 East County Line Road
Hatboro, PA 19040-1218

**Insurance Provided by:**
American Casualty Company of Reading, Pennsylvani
333 S. Wabash Avenue, Chicago, IL 60604

| COVERAGE PARTS | LIMITS OF LIABILITY |
|---|---|

**A. PROFESSIONAL LIABILITY**

| | | | | |
|---|---|---|---|---|
| Professional Liability (PL) | $    1,000,000 | each claim | $  3,000,000 | aggregate |
| Good Samaritan Liability | included above | | | |
| Personal Injury Liability | included above | | | |
| Malplacement Liability | included above | | | |

**B. COVERAGE EXTENSIONS:**

| | | | | |
|---|---|---|---|---|
| License Protection | $      10,000 | per proceeding | $   25,000 | aggregate |
| Defendant Expense Benefit | | | $   10,000 | aggregate |
| Deposition Representation | $       2,500 | per deposition | $    5,000 | aggregate |
| Assault | $      10,000 | per incident | $   25,000 | aggregate |
| Medical Payments | $       2,000 | per person | $  100,000 | aggregate |
| First Aid | | | $    2,500 | aggregate |
| Damage to Property of Others | $         500 | per incident | $   10,000 | aggregate |

**C. WORKPLACE LIABILITY**      Coverage part C. Workplace Liability does not apply if Coverage part D. General Liability is made part of this policy.

| | |
|---|---|
| Workplace Liability | included in A. PL limit shown above |
| Fire & Water Legal Liability | included in A. PL limit shown above subject to $150,000 sub-limit |
| Personal Liability | $1,000,000            aggregate |

**D. GENERAL LIABILITY**      Coverage part D. General Liability does not apply if Coverage part C. Workplace Liability is made part of this policy.

| | | |
|---|---|---|
| General Liability (GL) | none | none |
| Hired Auto & Non Owned Auto | none | none |
| Fire & Water Legal Liability | none | none |
| Personal Liability | none | none |

| Total Premium: $    374.00 | QUESTIONS? CALL: 1-800-982-9491 |
|---|---|

**Policy forms and endorsements attached at inception:**

G-121500-C  G-121503-C  G-121501-C  G-145184-A
G-147292-A  G-144872-A  G-123816-C27  G-123846-C27

Master Policy # 188711433

Keep this document in a safe place.  It and proof of payment are evidence of your insurance coverage.

Chairman of the Board                                    Secretary

G-141241-A (07/2001)          Coverage Change Date:          Endorsement Change Date:

HEALTHCARE  PROVIDERS
PROFESSIONAL LIABILITY INSURANCE

COMMON POLICY CONDITIONS

We are the stock insurance company designated on the **certificate of insurance**. In consideration of the premium charged, and in reliance upon all statements made and information furnished to us, and subject to the provisions of this policy, we agree with **you** as follows:

**I.   TERMS AND CONDITIONS**

The terms and conditions of each Coverage Part apply only to that Coverage Part and shall not apply to any other Coverage Part. If any provision in the Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

**II.   DUTIES AS THE FIRST NAMED INSURED ON THE CERTIFICATE OF INSURANCE**

The first **named insured**, on behalf of all of **you**, will be:

A.   authorized to make changes in the terms of this policy with our consent;

B.   the payee of any premiums we refund;

C.   responsible for:

   1.   the payment of all premiums due;

   2.   keeping records of the information we need for premium computation, and sending us copies at such times as we may request;

   3.   notifying us that the **named insured** wants to cancel this policy.

**III.   ASSISTANCE AND COOPERATION**

In the event of a **claim, you** shall:

A.   fully cooperate with us, or our designee, in the making of settlements, the conduct of suits or other proceedings, enforcing any right of contribution or indemnity against another who may be liable to **you** because of **injury** or **damage;**

B.   attend hearings, deposition and trials, assist in securing and giving of evidence, and assist in obtaining the attendance of witnesses;

C.   refuse, except at **your** own cost to voluntarily make any payment, assume any obligation or incur any expense without our written consent.

**IV.   SEPARATION OF INSUREDS**

This policy applies separately to each of **you** against whom a **claim** is brought except with respect to:

A.   the limits of liability; and

B.   any of **your** duties as the first **named insured** on the **certificate of insurance**.

**V.   CHANGES**

Notice to any person, other than our program administrator, or knowledge possessed by such person, shall not act as a waiver or change any part of this policy. It also will not prevent us from asserting any rights under the provisions of this policy. None of the provisions of this policy will be waived, changed or modified except by written endorsement issued to form a part of this policy.

G-121500- C (7/2001)
AMERICAN CASUALTY COMPANY OF READING, PA

At some time, we may make changes in our insurance policy forms. Where appropriate, these changes must conform to and be filed with state insurance supervisory authorities for approval. If, during **your policy period**, we make a policy change that extends or broadens **your** coverage, without increasing **your** premium, **your** coverage will automatically include such extension or broadening, on the effective date the change is approved in **your** state, except that this will not apply to **claims** that were reported to us prior to the effective date of such revision.

**VI.    TRANSFER OF INTEREST**

**You** must first obtain our written consent to transfer or assign this policy.  If **you** die, the policy will continue for the remaining part of the **policy period**; first, for the benefit of **your** legal representative while acting within their duties as such, and second, for the benefit of anyone having proper temporary custody of **your** property until a legal representative is appointed.

**VII.   CONCEALMENT, MISREPRESENTATION, FRAUD**

This policy is void in any case of fraud by **you** relating to it. It is also void if **you** intentionally conceal or misrepresent a material fact or circumstance concerning:

A.   this policy;

B.   any covered property or **your** interest in the covered property; or

C.   this insurance.

**VIII.  OTHER INSURANCE AND RISK TRANSFER ARRANGEMENTS**

If there is any other insurance policy or risk transfer instrument, including but not limited to, self-insured retentions, deductibles or other alternative arrangements ("other insurance"), that applies to any amount payable under this Policy, such other insurance must pay first.   It is the intent of this policy to apply only to the amounts covered under this Policy which exceed the available limit of all deductibles, limits of liability or self-insured amounts of the other insurance, whether primary, contributory, excess, contingent, or otherwise.  This insurance will not contribute with any other insurance.  In no event will we pay more than our limit of liability.

These provisions do not apply to other insurance written as specific excess insurance over the limits of liability of this policy.

**IX.    INSURANCE UNDER MORE THAN ONE COVERAGE**

If more than one of this policy's coverages apply to the same **injury** or **damage**, we will not pay more than the limit of liability of  the Coverage Part most applicable to the type of **injury** or **damage** sustained, or the actual amount of the **injury** or **damage**, whichever is less.

**X.     TRANSFER OF RIGHTS OF RECOVERY**

If any of **you** for whom we make payment under this policy have rights to recover amounts from another, those rights are transferred to us to the extent of our payment.  **You** must do everything necessary to secure our rights and must do nothing after **injury** or **damage** to impair them.

**XI.    LEGAL ACTION LIMITATION**

**You** may not bring any legal action against us concerning this policy until:

A.   **you** have fully complied with all the provisions of this policy; and

B.   the amount of **your** obligation to pay has been decided.  Such amount can be set by judgment against **you** after actual trial or by written agreement between **you**, the claimant and us.

Any entity, or their legal representative, is entitled to recover under this policy after they have secured a judgment or written agreement.  Recovery is limited to the extent of the insurance afforded by this policy.  No entity has any right under this policy to include us in any action against **you** to determine **your** liability, nor will

we be brought into such an action by **you** or **your** representative.  If **you** or **your** estate becomes bankrupt or insolvent, it does not change any of our obligations under this policy.

**XII.**   **PREMIUM**

All premium charges under this policy will be computed according to our rules and rating plans that apply at the inception of the current **policy period**.  All premiums are fixed and payable when due.  They may be paid to us or our program administrator.  The first premium is due on the inception date of the policy. We compute the premium **you** pay for this policy using information available prior to the effective date of the policy.

**XIII.**   **NON-RENEWAL/CANCELLATION**

This policy may be non-renewed or cancelled by us in accordance with requirements specified by the **named insured's** state insurance supervisory authorities and attached by amendatory endorsement to this policy.

The **named insured** first named on the **certificate of insurance** can cancel this policy at any time. To do so, such **named insured** must mail a written notice to us, telling us when the cancellation is to be effective.

**XIV.**   **RIGHT TO CLAIM INFORMATION**

Upon the written request of the **named insured**, we will provide the **named insured** with the following information relating to this and any preceding policy we have issued to the **named insured** during the previous three years:

A.   A list or other record of each **claim**, not previously reported to any other insurer, of which we were notified in accordance with these policy Conditions.  We will include the date and brief description of the **claim** if that information was in the notice we received.

B.   A summary by policy year, of **claim** status and payments made, stated separately, for each Aggregate Limit of Liability shown on the **certificate of insurance**.

**You** must not disclose this information to any claimant or their representative without our written consent.

We compile **claim** information for our own business purposes and exercise reasonable care in doing so.  In providing this information to the **named insured**, we and our program administrator make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on **your** behalf. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

**XV.**   **TERRITORY**

This policy applies to **claims** brought against **you** in the United States of America, including its territories and possessions, Puerto Rico or Canada.

**XVI.**   **HEADINGS**

The descriptions in the headings and subheadings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**XVII.**   **DEFINITIONS**

For purposes of this Policy, words in bold have the meaning set forth below.  However, any bolded word referenced in these Common Policy Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part.

**"Area of specialization"** means body of knowledge or expertise attained through experience and training in the profession specified on the **certificate of insurance**.

**"Asbestos"** means the mineral in any form whether or not the **asbestos** was at any time:

1.   airborne as a fiber, particle or dust;

2.   contained in or formed a part of a product, structure or other real or personal property;

3.   carried on clothing;

4. inhaled or ingested; or

5. transmitted by any other means.

**"Auto"** means a land motor vehicle, trailer or semi-trailer designed for use on public roads.  Any attached apparatus or machinery is included.  Mobile equipment is not included.

**"Business Premises"** means the established primary practice location of the **named insured** business entity and approaches immediately adjoining this location.

**"Certificate of Insurance"** means the page of the policy, containing specific information about the **named insured**, including, but not limited to its **policy period**, limits of liability, premium, and policy number.

**"Claim"** means a demand for money or services alleging **injury** or **damage**.  **Claim** also means the filing of a suit or the starting of arbitration proceedings naming **you** and alleging **injury** or **damage**.

**"Claim Expenses"** means:

1. fees charged by an attorney we designate; and

2. all other fees, costs and expenses, including interest on that part of any judgment that does not exceed the limit of **your** coverage, which result from the investigation, adjustment, defense and appeal of a **claim.**

These expenses must be incurred by us, or by **you** with our prior written consent.

**"Claim Expenses"** does not include:

1. salary charges of our regular **employees** or company officials; or

2. fees and expenses of independent adjusters.

**"Consulting Services"** means the rendering of advice or recommendations in **your area of specialization**, and the services related to the implementation of such advice or recommendations, performed by **you** for others. **Consulting services** also includes **expert witness** testimony by **you** for others, which is directly associated with **your area of specialization**.

**"Damage"** means:

1. physical **injury** to tangible property, including all resulting loss of use of that property; or

2. loss of use of tangible property that is not physically injured.

**"Employee"** means an individual whose work is engaged and directed by the **named insured.**

**"Expert Witness"** means one, who by reason of education or specialized experience, possesses superior knowledge respecting a subject, to assist the trier of fact, judge, jury or counsel in the understanding of complicated and technical subjects.

**"Family member"** means any person related to **you** by blood, marriage or adoption, whether or not living in **your residence**, including wards and foster children.  It also means any person not related to **you** who is residing in **your** home.

**"Hazardous Properties"** means any radioactive, toxic or explosive properties.

**"Hostile Fire"** means one that becomes uncontrollable or breaks out from where it was intended to be.

**"Injury"** has the meaning set forth in each individual coverage part.

**"Named Insured"** means the individual healthcare provider or business entity named on the **certificate of insurance** as the **named insured.**

**"Nuclear Facility"** means:

1. any **nuclear reactor;**

2. any equipment or device designed or used for:

    a. separating the isotopes of uranium or plutonium,

    b.   processing or utilizing **spent fuel**, or

    c.   handling, processing or packaging **waste;**

3.  any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the **named insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**; or

5.  any site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means "byproduct material", "source material", and/or "special nuclear material" as defined in the Atomic Energy Act of 1954 and any of its amendments.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to **damage** to or destruction of property, the word **damage** or destruction includes all forms of radioactive contamination of property or loss of use.

**"Personal Injury"** means **injury** arising out of one or more of the following offenses committed in the conduct of **your professional services:**

1.  testimony given at or arising out of inquests;

2.  malicious prosecution;

3.  false arrest, detention, imprisonment, wrongful entry or eviction or other invasion of the right of private occupancy;

4.  libel, slander or other disparaging materials;

5.  a violation of an individual's or entity's right to privacy;

6.  **assault**, battery, mental anguish, mental shock or humiliation;

7.  misappropriation of advertising ideas, trade secrets, or style of doing business; or

8.  infringement of patent, copyright, trademark, trade name, trade dress, service mark, service name, logo, title or slogan.

**"Placement Services"** means your responsibilities for arranging and qualifying suitable work for eligible healthcare providers.

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**.  **Waste** includes materials to be recycled, reconditioned or reclaimed.  **Pollutants** does not mean heat, smoke or fumes from a **hostile fire**.

**"Policy Period"** means the time from 12:01 A.M. on the inception date of this Policy to the earlier of 12:01 A.M. of the expiration, termination or cancellation date of this Policy.  All times are determined by the **named insured's** address as set forth in the **certificate of insurance.**

**"Professional Services"** means those services for which **you** are licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession(s) shown on the **certificate of insurance** and which **you** perform as, or on behalf of, the **named insured**.  **Professional services** also means **your** services while acting in the profession(s) shown on the **certificate of insurance** as a member of a formal accreditation, standards review, or similar professional board or committee, including the directives of such board or committee.

**"Residence"** means the established primary personal **residence** of the **named insured** individual healthcare provider and approaches immediately adjoining such **residence.**

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

**"Waste"** means any product containing **nuclear material** other than the tailings produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **nuclear material** content; or resulting from the operation by any entity of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

**"Workplace"** means any location used by **you** to provide **professional services**.

**"You"** or **"Your"** has the meaning set forth in each Coverage Part.


IN WITNESS WHEREOF, we have caused this Policy to be executed by our Chairperson and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the **Certificate of Insurance** and payment of the applicable premium.

*Bernard L. Hengelbaugh*
_____
Chairman of the Board

*Jonathan Kanton*
_____
Secretary

HEALTHCARE PROVIDERS
PROFESSIONAL LIABILITY COVERAGE PART

OCCURRENCE

**THIS IS AN OCCURRENCE COVERAGE PART AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO THOSE CLAIMS WHICH ARE THE RESULT OF MEDICAL INCIDENTS THAT OCCURRED ON OR AFTER THE EFFECTIVE DATE OF COVERAGE, AND BEFORE THE EXPIRATION DATE STATED ON THE CERTIFICATE OF INSURANCE.  CLAIM EXPENSES SHALL BE IN ADDITION TO THE LIMIT OF LIABILITY.**

I.   **COVERAGE AGREEMENTS**

Coverage under any of the following coverage agreements apply only to acts, errors or omissions, including **medical incidents, Good Samaritan incidents, placement services incidents,** or **personal injury**, which occurred on or after the effective date of coverage, and before the expiration date of the **policy period** stated on the **certificate of insurance.**

In addition to the limit of liability, we will also pay **claim expenses**.

A.   PROFESSIONAL LIABILITY

We will pay all amounts, up to the Professional Liability limit of liability stated on the **certificate of insurance,** that **you** become legally obligated to pay as a result of a **professional liability claim** arising out of a **medical incident** by **you** or by someone for whose **professional services you** are legally responsible.

B.   GOOD SAMARITAN LIABILITY

We will pay all amounts, up to the Good Samaritan Liability limit of liability stated on the **certificate of insurance,** that **you** become legally obligated to pay as a result of a **Good Samaritan claim** arising out of a **Good Samaritan Incident.**

C.   **PERSONAL INJURY** LIABILITY

We will pay all amounts, up to the **Personal Injury** Liability limit of liability stated on the **certificate of insurance**, that **you** become legally obligated to pay as a result of a **personal injury claim** arising out of **personal injury**.

D.   MALPLACEMENT LIABILITY

We will pay all amounts, up to the Malplacement Liability limit of liability stated on the **certificate of insurance,** that **you** become legally obligated to pay as a result of a **malplacement claim** arising out of a **placement services incident.**

## II. COVERAGE EXTENSIONS

Although payment does not arise from **claims**, we will pay amounts provided by these Coverage Extensions as follows:

### A. LICENSE PROTECTION

We will pay **you** up to the License Protection limit of liability stated on the **certificate of insurance,** for attorney fees incurred by **you,** for **your** investigation and defense of **complaints.** Such **complaints** must:

1.  arise from a **license protection incident** which occurred on or after the effective date of coverage, and before the expiration date of the **policy period** stated on the **certificate of insurance;** and

2.  be filed against **you** with a state or federal administrative agency, licensing or regulatory authority responsible for regulating **your** professional conduct.

The amount payable for attorney fees will not exceed $150 per hour.

Included within, and not in addition to, this limit of liability are **covered expenses** incurred by **you** as a result of **your** required attendance at a **disciplinary hearing or proceeding.** The amount payable for **covered expenses** will not exceed $500 per proceeding.

In no event shall the amount payable hereunder exceed the per proceeding limit of liability and per **policy period** License Protection limit of liability shown on the **certificate of insurance** regardless of the number of **you** or the number of such proceedings.

**You** have the right to select **your** legal defense counsel, but only for the purpose of **your** defense of **complaint(s)** and **disciplinary hearings or proceedings** under this Coverage Extension.

### B. DEFENDANT EXPENSE BENEFIT

We will pay **you** up to the Defendant Expense Benefit limit of liability stated on the **certificate of insurance,** for all **covered expenses** incurred by **you** as a result of a covered **claim.**

These amounts must result from **your** being required by us or by the defense attorney to attend a trial, hearing or proceeding. In no event shall the amount payable hereunder exceed the per proceeding limit of liability and all proceeding in the aggregate Defendant Expense Benefit limit of liability shown on the **certificate of insurance** regardless of the number of **you** or the number of such proceedings.

### C. DEPOSITION REPRESENTATION

We will pay up to the Deposition Representation limit of liability stated on the **certificate of insurance,** for attorney fees, charged by an attorney we designate, to prepare **you** for deposition provided:

1.  **you** receive a subpoena, during the **policy period,** for documents or testimony arising out of **professional services;** and

2.  **you** provide us with a copy of the subpoena; and

3.  the subpoena arises out of a lawsuit to which **you** are not a party; and

4.  **you** have not been engaged to provide advice or testimony in connection with the lawsuit, nor have **you** provided such advice or testimony in the past.

Any notice **you** give us of such subpoena shall be deemed notification of a potential **claim** under the **DUTIES IN THE EVENT OF A CLAIM** section of this Coverage Part.

### D. ASSAULT

We will pay **you** up to the **Assault** limit of liability stated on the **certificate of insurance,** for:

1.  medical expenses **you** incur, for **injury to you;** or

2.  reimbursement for **damage** to **your personal property**

resulting from an **assault** on **you** at **your workplace**, or while traveling to or from **your workplace** provided that:

1. such **assault** occurs during the **policy period**;

2. **you**, or someone acting on **your** behalf, give us written proof of **claim** and as soon as practicable, under oath if required, and execute authorizations to allow us to obtain copies of all medical documents relating to such **assault**;

3. **you** submit to physical examination by a physician(s) selected by us when, and as often as, we may reasonably require;

This coverage does not apply to **damage** to any mode of transportation used by **you** to go to and from **your workplace**, or **damage** to any business or **personal property** owned, leased or rented by any other person or business enterprise while in **your** possession.

This coverage does not apply to any **personal property** lost or stolen during an **assault** on **you**.

E.  MEDICAL PAYMENTS

We will pay up to the Medical Payments limit of liability stated on the **certificate of insurance**, regardless of fault, for necessary medical expenses caused by an incident, other than a **medical incident**, provided that:

1. the incident occurs during the **policy period**;

2. the expenses are  incurred  or medically ascertained within a three (3) year period from the date of the incident;

3. the incident results in **injury** to a person other than **you**,  while such person is:

    a.  at the **named insured's residence** or **business premises** with the permission of the **named insured**; or

    b.  away from the **named insured's residence** or **business premises** provided that the **injury** arises out of a condition at the **named insured's residence** or **business premises**;

4. the injured person(s), or someone acting on their behalf gives us written proof of **claim** and as soon as practicable, under oath if required, and execute authorizations to allow us to obtain copies of all medical documents relating to such **injury**;

5. the injured person submits to physical examination by a physician(s) selected by us when, and as often as, we may reasonably require;

6. **you** are not the injured party.

F.  FIRST AID

We will pay **you** up to the First Aid limit of liability stated on the **certificate of insurance**, amounts for which **you** voluntarily make payment or incur for first aid rendered to a person, other than **you**, as a result of **injury** caused by an incident, other than a **medical incident,** that occurs during the **policy period** and that **you** promptly report to us. The first aid must be provided within a 48-hour period after the **injury** occurred.

G.  **DAMAGE** TO PROPERTY OF OTHERS

We will pay up to the **Damage** to Property of Others limit of liability stated on the **certificate of insurance**, for **damage** that occurs during the **policy period** and is caused by **you** to the property of others provided such **damage**:

1. was not caused intentionally; and

2. occurred only at the **named insured's residence** or **your workplace**.

Within sixty (60) days from the date of **damage**, **you** must submit a sworn statement of such loss to us. **You** must also exhibit the **damaged** or destroyed property if such property is in **your** possession or control.

### III. DEFENSE AND SETTLEMENT

We have the right and duty to defend any **claim** that is a **professional liability claim**, **Good Samaritan Claim**, **personal injury claim** or **malplacement claim**. We will:

A.   do this even if any of the charges of such **claim** are groundless, false or fraudulent; and

B.   investigate and settle any **claim**, as we feel appropriate.

Our payment of the applicable limit of liability ends our duty to defend or settle. We have no duty to defend any **claims** not covered by this Coverage Part.

### IV. ADDITIONAL DEFINITIONS

For purposes of this Coverage Part only, words in bold have the meaning set forth below:

**"Assault"** means any willful attempt to inflict physical harm on **you** by another, which results in **injury** or **damage**.

**"Complaint"** means the official documentation required by an entity responsible for regulating **your** professional conduct to trigger an investigation of **you** for a **license protection incident.**

**"Covered Expenses"** means only expenses for travel, food, lodging, and wage loss. **You** must provide us with written documentation containing sufficient information and detail to identify **you**, the time, place and circumstances that resulted in such expenses. **You** must also identify the court and all parties to the action before the court.

**"Disciplinary Hearing or Proceeding"** means a hearing or professional review conducted by any state or federal administrative agency, licensing or regulatory authority responsible for regulating **your** professional conduct.

**"Injury"** means bodily **injury**, sickness, disease, mental or emotional distress sustained by a person, or death.

**"License Protection Incident"** means a **medical incident,** or an event or circumstance arising out of an actual or alleged violation of the standards that govern **your** profession, leading to a **complaint** filed against **you**, charging **you** with professional misconduct, incompetence or physical or mental incapacity, and which could result in a **disciplinary hearing or proceeding.**

**"Good Samaritan Claim"** means a **claim** arising out of a **Good Samaritan Incident.**

**"Good Samaritan Incident"** means any act, error or omission in **your** providing **professional services** in a sudden and unforeseen emergency situation for which no remuneration is expected, demanded or received.

**"Malplacement Claim"** means a **claim** arising out of a **placement services incident.**

**"Medical Incident"** means any act, error or omission in **your** providing **professional services** which results in **injury** or **damage**. **Medical incident** does not include a **Good Samaritan incident**, a **placement services incident** or **personal injury.**

**"Personal Injury Claim"** means a **claim** arising out of **personal injury.**

**"Personal Property"** means **your** property other than buildings and their appurtenances, consisting of the following:

1.   furniture, fixtures, machinery and equipment not permanently installed;

2.   all other  property, other than real property, owned by **you** and used in **your** practice; and

3.   merchandise held in storage or for sale, raw materials in process or finished goods, including supplies used in their packing or shipping.

**"Placement Services Incident"** means an act, error or omission arising from **your placement services.**

**"Professional Liability Claim"** means a **claim** arising out of a **medical incident.**

**"Related Claim"** means all **claims** arising out of a single act, error or omission or arising out of **related acts, errors or omissions** in the rendering of **professional services** or placement services.

"**Related acts, errors or omissions**" mean all acts, errors or omissions in the rendering of **professional services** or placement services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

"**Supervision**" means **you** are working under a health-care plan set up by **your** employer, or by the group with whom **you** have contracted, to provide health-care services. Only those skills which the employer or group has verified **you** are qualified to perform will be included in the health-care plan. **Supervision** requires verification, on a regular basis and by a licensed health-care professional qualified to supervise **your professional services**, that **you** are providing **your professional services** in conformance with the standard of care relevant to **your** practice location.

"**You**" or "**Your**" means the **named insured** and, if the **named insured** is not a natural person:

1. any individual who, during the **policy period,** is or becomes a partner, officer, director, stockholder-**employee**, manager, member or **employee** of the **named insured,** but only for **professional services** performed on behalf of the **named insured**; or

2. any individual who, during the **policy period**, is or becomes a substitute healthcare provider that the **named insured** contracts with, but only for **professional services** performed on behalf of the **named insured**; or

3. any individual previously affiliated with the **named insured** as its partner, officer, director, stockholder-**employee**, manager, member **or employee** but only for **professional services** performed on behalf of the **named insured** during the course of such employment.

# V.  EXCLUSIONS

We will not defend any **claim** for, or pay any amounts, including **claim expenses**, based on, arising out of, or related to:

A.  **injury** to:

1. an **employee** of **yours** arising out of and in the course of employment by **you**; or

2. a **family member** of that **employee** as a consequence of 1 above; or

3. **your family member**;

This exclusion applies:

1. whether **you** may be liable as an employer or in any other capacity; or

2. to any obligation to share amounts with or repay someone else who must pay amounts because of the **injury**;

B.  any unemployment, workers' compensation, disability benefits, or other similar law;

C.  any of **your** acts, errors or omissions in **your** capacity as:

1. nurse anesthetist, nurse-midwife or midwife;

2. physician, dentist, chiropractor, or podiatrist;

3. self-employed perfusionist;

4. a healthcare student, healthcare aide, home healthcare aide, or dental hygienist, who is not subject to **supervision**.

D.  any liability that **you** assume under any contract or agreement. This exclusion does not apply to:

1. liability **you** assume under a contract with a Health Maintenance Organization, Preferred Provider Organization, Independent Practice Association, or any other similar organization; but only for such liability as is attributable to **your** alleged negligence; or

2. a warranty of fitness or quality of any therapeutic agents or supplies **you** have furnished or supplied in connection with treatment **you** have performed;

E.  any liability **you** have for a business or profession, including **consulting services**, other than that named on the **certificate of insurance**;

F.  a willful violation of a statute, ordinance or regulation imposing criminal penalties. We will defend any civil suit against **you** seeking amounts, which would be covered if this exclusion did not apply. In such case, we will pay only **claim expenses**;

G.  **injury** or **damage** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving **your** owning, using, taking care of, operating, leasing or renting, loading or unloading of patients or property from, transporting patients in, or entrusting to others an **auto**, mobile equipment, watercraft or aircraft, including an **auto**, mobile equipment, watercraft or aircraft which is loaned to the **named insured** or which is operated for the **named insured** by its **employee**, including an **employee**-owned **auto**.

H.  any **injury**, or **damage**:

  1.  with respect to which **you** are also an insured under a Nuclear Energy Liability Policy issued by:

      a.  Nuclear Energy Liability Insurance Association; or

      b.  Mutual Atomic Energy Liability Underwriters; or

      c.  Nuclear Insurance Association of Canada,

      or any of their successors, or would be an insured under any such policy if it had not terminated due to exhaustion of its limits of liability; or

  2.  resulting from the **hazardous properties** of **nuclear material** and with respect to which:

      a.  any person, organization or entity is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any of its amendments, or

      b.  **you** are, or had this policy not been issued would be, entitled to indemnity from the United States of America or any of its agencies, under any agreement entered into by the United States of America or any of its agencies with any person, organization or entity;

  3.  resulting from the **hazardous properties** of **nuclear material** if:

      a.  the **nuclear material**:

          i)   is at any **nuclear facility** owned or operated by or on **your** behalf; or

          ii)  has been discharged or dispersed therefrom; or

          iii) is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on **your** behalf;

      b.  the **injury** or destruction arises out of the furnishing by **you** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**. If such facility is within the United States of America, its territories, possessions or Canada, this subparagraph 3.b. applies only to **injury** to or destruction of property at such **nuclear facility.**

I.  the return or withdrawal of fees or government payments imposed directly upon **you**; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

J.  liability resulting from **professional services you** provide while **your** license or certification to practice is suspended, revoked, or no longer valid;

K.  **injury** or **damage you** expected or intended, or which a reasonable person would have expected.   This exclusion does not apply to **injury** or **damage** resulting from the use of reasonable force to protect persons or property;

L.  actual or alleged involvement in any:

  1.  federal or state anti-trust law violation; or

  2.  agreement or conspiracy to restrain trade.

This exclusion does not apply to **claims** arising from **your** activity as a member of any committee, panel, or board which provides underwriting or claims advice or recommendations, provided **your** activity is within the scope of the committee's, panel's, or board's established guidelines;

M. any loss, cost or expense:

   1. which would not have happened in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time; or

   2. arising out of any:

      a. **claim** or suit by or on behalf of a governmental authority for amounts because of testing for, monitoring, cleaning up, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**; or

      b. request, demand or order that **you** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of **pollutants**;

N. any **claim** arising out of any act, error or omission, including a **medical incident, Good Samaritan incident, placement services incident** or **personal injury** that happened before the effective date of this policy;

O. any direct or consequential **injury** or **damage** arising out of any:

   1. refusal to employ; or

   2. termination of employment; or

   3. coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

P. any act of sexual intimacy, sexual molestation or sexual **assault**.  We shall provide **you** with a defense of such **claim** unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.  Such defense will not waive any of our rights under this Policy.  Criminal proceedings are not covered under this Policy regardless of the allegations made against **you**;

Q. any loss, cost or expense arising out of, relating to, or involving the actual, alleged or threatened exposure at any time to **asbestos**; or that may be awarded or incurred:

   1. by reason of a **claim** or suit relating to **asbestos**; or

   2. in complying with a governmental directive or request to test for, monitor, clean up, remove, contain, or dispose of **asbestos**.

## VI.   LIMIT OF LIABILITY

A.   Each **Claim**

The limits of liability stated on the **certificate of insurance** as applicable to "each **claim**" means that our liability for such **claim** shall not exceed such stated amount.

B.   Aggregate

Subject to provision A. above, limits of liability stated on the **certificate of insurance** as applicable to "all **claims** in the aggregate" means that our liability shall not exceed such stated amount.

C.   **Claim Expenses**

**Claim expenses** are in addition to our limits of liability.

D.   Multiple Insureds, **Claims** and Claimants

The limits of liability shown on the **certificate of insurance** is the maximum amount we will pay regardless of the number of **you** insured under this Coverage Part, **claims** made or persons or entities making **claims**.

E.   **Related Claims**

If **related claims** are made against **you**, all such **related claims** shall be considered a single **claim**, and the limits of liability applicable to such **claim** shall be the limits of liability applicable to the policy period in force when the act, error or omission, or earliest of **related acts, errors or omissions**, occurred.

## VII.   DUTIES IN THE EVENT OF A CLAIM

The **named insured** must notify us, or our program administrator, in writing, as soon as practicable, of any act, error or omission, including **medical incidents, Good Samaritan incidents, placement services incidents** or **personal injury** that may result in a **claim.** To the extent possible, notice should include:

A.   How, when and where such act, error or omission or **claim** took place;

B.   The names and addresses of any injured persons or witnesses; and

C.   The nature and location of any **injury** or **damage** arising out of such act, error or omission or **claim**.

G-121501-C (7/2001)
AMERICAN CASUALTY COMPANY OF READING, PA

HEALTHCARE  PROVIDERS
**WORKPLACE LIABILITY COVERAGE PART**

OCCURRENCE

---

**THIS IS AN OCCURRENCE COVERAGE PART AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM WHICH IS THE RESULT OF INJURY OR DAMAGE THAT OCCURRED ON OR AFTER THE EFFECTIVE DATE OF COVERAGE, AND BEFORE THE EXPIRATION OF THE POLICY PERIOD STATED ON THE CERTIFICATE OF INSURANCE. CLAIM EXPENSES ARE IN ADDITION TO THE LIMIT OF LIABILITY.**

---

I.  **COVERAGE AGREEMENT**

A.  **WORKPLACE** LIABILITY

Subject to paragraph B below, we will pay all amounts, up to the **Workplace** Liability limit of liability stated on the **certificate of insurance**, which **you** become legally obligated to pay, including **host liquor liability** and **products liability**, as a result of **injury** or **damage** to which this coverage part applies. We will also pay **claim expenses**.  The **injury** or **damage** must be caused by an **occurrence** that happens at the **workplace** during the **policy period**.

B.  FIRE & WATER LEGAL LIABILITY

With respect to the **named insured's** legal liability for **damage** to property in which the **named insured** does not have a financial interest or own, caused by:

1.  fire;

2.  discharge, leakage or overflow of water or steam from a plumbing, heating, refrigeration or air conditioning system; or

3.  rain which enters directly into the building through open doors, windows, skylights, transoms or ventilators;

we will pay up to $150,000 provided that the **named insured** does not assume liability under a contract or agreement greater than is imposed by law.  The **damage** must be caused by an **occurrence** that happens at the **workplace** during the **policy period**.

C.  PERSONAL LIABILITY

Where the **named insured** is a natural person, we will pay all amounts, up to the Personal Liability limits of liability stated on the **certificate of insurance**, that the **named insured** becomes legally obligated to pay for **injury** or **damage** as a result of a **personal liability claim**.  The **injury** or **damage** must be caused by an **occurrence** that happens at **named insured's residence** and arises out of **named insured's** non-business activities. This coverage shall not apply to **damage** to property the **named insured** owns, rents, occupies or uses, or which is in the **named insured's** care, custody or control.

Coverage for **personal liability claims** will only apply if the **named insured** is a natural person with no **employees**.

II.  **DEFENSE AND SETTLEMENT**

We have the right and duty to defend any **claim**. We will:

A.  do this even if any of the charges of the **claim** are groundless, false or fraudulent;

B.  investigate and settle any **claim** as we feel appropriate.

Our payment of the limit of liability ends our duty to defend or settle. We have no duty to defend any **claims** not covered by this Coverage Part.

### III. ADDITIONAL DEFINITIONS

For purposes of this coverage part only, words in bold have the meaning set forth below:

**"Host Liquor Liability"** means **injury** or **damage** arising out of the giving or serving of alcoholic beverages at functions incidental to **your** business providing:

1. **you** are not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages; or

2. there has not been an intentional violation of any statute, regulation or ordinance relating to the sale, gift, distribution or use of alcoholic beverages, committed by **you**, or at **your** direction.

**"Injury"** means bodily **injury**, sickness, disease, mental or emotional distress sustained by a person, or death.

**"Insured Contract"** means:

1. a lease of **business premises**;

2. a sidetrack agreement;

3. an easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. an elevator maintenance agreement; or

6. that part of any other contract or agreement pertaining to the **named insured's** business, including an indemnification of a municipality in connection with work performed for a municipality, under which the **named insured** assumes the tort liability of another party to pay for **injury** or **damage** to a third party if the contract or agreement is made prior to the **injury** or **damage.**

**"Insured Contract"** does not mean that part of any contract or agreement:

1. that indemnifies any entity for **injury** or **damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for **injury** or **damage** arising out of:

   a. preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the **injury** or **damage;** or

3. that indemnifies any entity for **damage** by fire to **business premises** rented or loaned to the **named insured.**

**"Occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **injury** or **damage**.

**"Personal liability claim"** means a **claim** arising out of **injury** or **damage** to a third party that happens at the **named insured's** personal **residence** and arises out of non-business activity.

**"Product"** means:

1. any healthcare goods or items manufactured or modified by:

   a. the **named insured**; or

   b. others trading under the **named insured's** name; or

   c. an entity whose business or assets the **named insured** has acquired; or

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such healthcare goods or items.

**"Product"** does not include real property, or any goods and items that the **named insured** sells.

**"Products Liability"** means **injury** or **damage** caused by a **product.**

**"You"** or **"Your"** means the **named insured** and, if the **named insured** is not a natural person:

1. any individual who, during the **policy period,** is or becomes a partner, officer, director, stockholder-**employee**, manager, member or **employee** of the **named insured,** but only while acting within the scope of their employment by the **named insured**; or

2. any individual who, during the **policy period**, is or becomes a substitute health care provider, other than a physician, dentist, nurse anesthetist, nurse mid-wife, chiropractor, self-employed perfusionist, or podiatrist, that the **named insured** contracts with, but only while acting within the scope of their employment by the **named insured**; or

3. any individual previously affiliated with the **named insured** as its partner, officer, director, stockholder-**employee**, manager, member or **employee** but only while acting within the scope of their employment by the **named insured,** during the course of such employment.

## IV. EXCLUSIONS

We will not defend any **claim** for, or pay any amounts, including **claim expenses**, based on, arising out of, or related to:

A. **injury** to:

   1. an **employee** of the **named insured** arising out of and in the course of employment by the **named insured**; or

   2. a **family member** of that **employee** as a consequence of 1 above; or

   3. the **named insured's family member**.

   This exclusion applies:

   1. whether the **named insured** may be liable as an employer or in any other capacity; and

   2. to any obligation to share amounts with or repay someone else who must pay amounts because of the **injury** or **damage**;

B. amounts which the **named insured** or any party must pay under any unemployment or workers' compensation, disability benefits, or other similar law;

C. **injury** or **damage** resulting from any **professional services, placement services** or **personal injury**;

D. any liability  the **named insured** assumes under any contract or agreement, other than an **insured contract**. This exclusion does not apply to:

   1. liability the **named insured** assumes under a contract with a Health Maintenance Organization, Preferred Provider Organization, Independent Practice Association, or any other similar organization; but only for such liability as is attributable to **your** alleged negligence; or

   2. a warranty of fitness or quality of any therapeutic agents or supplies the **named insured** has furnished or supplied in connection with treatment **you** have performed;

E. any liability **you** have for a business or profession, including **consulting services**, other than that named on the **certificate of insurance**;

F. **injury** or **damage** resulting from an **occurrence** which is also a willful violation of a statute, ordinance or regulation imposing criminal penalties.  We will defend any civil suit against **you** seeking amounts that would be covered if this exclusion did not apply.  In such case, we will pay only **claim expenses** related to such defense;

G. **injury** or **damage** for which **you** may be held liable as a result of:

   1. causing or contributing to the alcoholic beverage intoxication of any person; or

   2. furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol;

This exclusion does not apply to **host liquor liability**;

H.  **injury** or **damage** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving **you** owning, using, taking care of, operating, leasing or renting, loading or unloading of patients or property from, transporting patients in, or entrusting to others an **auto**, mobile equipment, watercraft or aircraft, including an **auto,** mobile equipment, watercraft or aircraft which is loaned to the **named insured** or which is operated for the **named insured** by it's **employee**, including an **employee**-owned **auto**;

I.  loss, under any circumstances, due to nuclear reaction, radiation, or contamination, regardless of cause;

J.  the return or withdrawal of fees or government payments imposed directly upon **you**; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

K.  **injury** or **damage you** expected or intended, or which a reasonable person would have expected.   This exclusion does not apply to **injury** or **damage** resulting from the use of reasonable force to protect persons or property;

L.  any **claim** arising out of actual or alleged involvement in any:

1.  federal or state anti-trust law violation; or

2.  agreement or conspiracy to restrain trade;

M.  any loss, cost or expense:

1.  which would not have happened, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time; or

2.  arising out of any:

a.  **claim** or suit by or on behalf of a governmental authority for amounts because of testing for, monitoring, cleaning up, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**; or

b.  request, demand or order that **you** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**;

N.  any loss, cost or expense arising out of, relating to, or involving the actual, alleged or threatened exposure at any time to **asbestos**; or that may be awarded or incurred:

1.  by reason of a **claim** or suit relating to **asbestos**; or

2.  in complying with a governmental directive or request to test for, monitor, clean up, remove, contain, or dispose of **asbestos**;

O.  **damage** to property **you** own, rent or occupy, hold for sale, or which has been given to **you** for storage or safekeeping except to the extent coverage would apply under Section I, paragraph B, Fire & Water legal liability;

P.  loss of use of tangible property which has not been physically damaged if:

1.  a delay in or lack of performance has been caused by or on **your** behalf under any contract or agreement; or

2.  **products** or work completed on the **named insured's** behalf do not meet the standards the **named insured** has warranted or represented;

We will cover loss of use of tangible property if:

1.  the loss results from a sudden and accidental physical **damage** to or destruction of **products** or work completed by or on the **named insured's** behalf; and

2.  **products** or work has been put to use by a person or organization other than the **named insured;**

Q.  **damage** to property while on the **business premises** to have operations performed on the property by or on the **named insured's** behalf;

R.  **damage** to tools or equipment while being used to perform operations;

S.  **damage** to property in **your** custody which **you** are to install, erect or use in any construction;

T.  **damage** to any property away from the **business premises**:

1.  upon which **you** or someone on **your** behalf is performing operations at the time the **damage** occurs; or

2.  which must be restored, repaired or replaced because of faulty workmanship by or on **your** behalf;

U.  **injury** or **damage** on leased **business premises**:

1.  after the **named insured** ceases to be a tenant of the leased **business premises**; or

2.  for structural alterations, new construction or demolition operations performed by or for the owner of the **business premises**.

V.  any act of sexual intimacy, sexual molestation or sexual **assault**. We shall provide **you** with a defense of such **claim** unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of our rights under this Policy.  Criminal proceedings are not covered under this Policy regardless of the allegations made against **you**;

W.  any direct or consequential **injury** or **damage** arising out of any:

1.  refusal to employ; or

2.  termination of employment; or

3.  coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

X.  by or on behalf of **you** against any other of **you.**

## V.  LIMIT OF LIABILITY

A.  Each **Occurrence**

The limit of liability stated on the **certificate of insurance** for each **occurrence**, is the limit of our liability for all **injury** or **damage** arising out of, or in connection with the same **occurrence**. This limit applies regardless of the number of persons or organizations who are covered under this policy.

B.  Aggregate

Subject to provision A. above, the total limit of our liability for all **injury** and **damage** shall not exceed the limit of liability stated on the **certificate of insurance** as aggregate. The aggregate limit of liability applies to each **policy period** for all **occurrences** for which **claims** are made.

C.  **Claim expenses** are in addition to the limit of liability.

## VI.  DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE OR CLAIM

The **named insured** must notify us, or our program administrator, in writing, as soon as practicable, of an **occurrence,** an offense which may result in a **claim,** or a **claim**. To the extent possible, notice should include:

A.  How, when and where the **occurrence,** offense or **claim** took place;

B.  The names and addresses of any injured persons or witnesses; and

C.  The nature and location of any **injury** or **damage** arising out of the **occurrence,** offense or **claim.**



### POLICYHOLDER NOTICE
### Economic and Trade Sanctions Conditions

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit <u>all</u> United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

The purpose of this letter is to advise you that your policy includes OFAC exclusionary policy language,. The purpose of this language is to provide that any determination that your policy violates certain Federal laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups) any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

### ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (OFAC) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

**THIS DISCLOSURE NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGE AND PRICE OF YOUR POLICY. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL</u>. YOUR INDEPENDENT INSURANCE AGENT WILL BE ABLE TO EXPLAIN THE TERMS OF THE CONTRACT IN DETAIL.**



## POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us on the Policy Effective Date shown above. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups) any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.                    **Over please...**

G-145184-A L-2410-404



**Silica, Mold, Asbestos Notice to insureds:**

Re: Healthcare Providers General Liability and Workplace Liability Insurance Endorsement

Dear Policyholder:

Our records indicate that you have the policy listed above coming up for renewal with us on the Effective Date shown above. Because the insurance marketplace has been faced with a variety of extremely challenging events recently, it is necessary for us to make certain changes to the coverage we offer to our policyholders. The purpose of this letter is to advise you that if your policy is renewed, it may contain the following revision to coverage based on your individual state approvals and/or requirements.

**COVERAGE REDUCTIONS OR RESTRICTIONS THAT MAY APPLY TO THE ABOVE TYPES OF COVERAGE IF THEY ARE RENEWED ARE:**

**Exclusion – Silica**

When this endorsement is attached to your policy, coverage is excluded for:

1. "Bodily injury" which arises out of the respiration or ingestion of "silica";

2. "Property damage" which arises out of the presence of "silica"; and

3. "Personal and advertising injury" which arises out of the exposure to or the presence of "silica".

"Silica" means the chemical compound silicon dioxide ($SiO2$) in any form, including dust which contains "silica".

**Mold Exclusions**

You may have read or heard about the rapidly rising cost of claims insurers are facing as a result of a growing numbers of mold, fungi, and microbe-related claims. Not only have the number of these claims grown, but the losses associated with mold/fungi/microbe claims have expanded significantly. Because these claims and the corresponding legal liability remain uncertain and are continuing to emerge, in most cases sufficient data does not exist at this time to support reliable pricing of coverage. While the extent of rate adjustment that would be necessary to cover mold-related losses is large, there simply is not enough information to determine the appropriate rate of increase. As a result, we have determined that it is necessary to exclude, or in some states restrict, coverage for mold, fungi, or microbe related losses. Accordingly, the exclusion or limitation that may be applied to your policy will specify the absence (or extent) of coverage for mold/fungi/microbe related losses.

**Asbestos**

The Asbestos Exclusion Endorsement excludes coverage for Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of the actual, alleged or threatened exposure to asbestos; or any loss, cost or expense that may be awarded or incurred: by reason of a claim or suit for any such injury or damage or in complying with a governmental directive to test for, monitor, clean up, remove, contain or dispose of asbestos.

It was not CNA's intent to provide liability coverage for asbestos related injuries or losses. The Asbestos Exclusion has been added to your policy to further clarify coverage and help avoid any misunderstanding at the time of loss.

**COVERAGE OF AND CAP ON LOSSES FOR CERTIFIED ACTS OF TERRORISM**

In consideration of the premium charge of $_____, it is agreed as follows:

1.      The DEFINITIONS section is amended by the addition of the following new term:

**"Certified Act of Terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **Certified Act of Terrorism:**

a.   The act resulted in aggregate losses in excess of $5 million; and

b.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.      This Policy provides coverage for losses arising from **Certified Acts of Terrorism** subject to all other terms and conditions of this policy.

3.      Under the federal Terrorism Risk Insurance Act of 2002, any losses caused by **Certified Acts of Terrorism** will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

4.      With respect to any one or more **Certified Acts of Terrorism**,   The Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause in such law which results in a cap on the Insurer's liability for payments for terrorism losses.


All other provisions of the Policy remain unchanged.

G-144872-A

Ed. 1/03

**HEALTHCARE PROVIDERS
PROFESSIONAL LIABILITY INSURANCE ENDORSEMENT**

**CANCELLATION AND NON-RENEWAL ENDORSEMENT**

**STATE OF NEVADA**

It is hereby agreed that Common Policy Conditions number XIII. Non-Renewal/Cancellation is deleted in its entirety and replaced with the following:

Cancellation and Non-Renewal

1. Cancellation by the **named insured**

   The **named insured** has the right to cancel this Policy at any time by giving notice to us stating when thereafter the cancellation shall be effective.  If the Policy is so canceled, earned premium shall be computed pro rata.

2. Cancellation by us

   We have the right to cancel this Policy at any time and for any reason within the first sixty-nine (69) days.  We must mail notice of cancellation at least thirty (30) days prior to the effective date of such cancellation.

   After this Policy has been in effect for seventy (70) days or more, it may be canceled only for one of the following reasons:

   a. Nonpayment;

   b. Misrepresentation;

   c. Violation of policy conditions;

   d. Conviction arising out of acts increasing hazard insured against;

   e. A material change in nature of extent of risk;

   f. A determination that continuation would jeopardize solvency or be hazardous to interests of policyholders.

   g. Determination by the commissioner that continuation of policy would violate the law.

   We must mail notice of cancellation at least thirty (30) days prior to the effective date of such cancellation.  If we cancel for non-payment of premium, we must mail notice of cancellation at least ten (10) days prior to the effective date of such cancellation.

3. Non-Renewal by us

   We have the right to non-renew this Policy effective on any policy anniversary date.  All notices of non-renewal must be mailed to the **named insured** at the last mailing address known to us, at least sixty (60) days prior to the effective date of non-renewal and shall provide a specific explanation of the reason(s) for non-renewal.

This endorsement is a part  of **your** policy and takes effect on the effective date of **your** policy, unless another effective date is shown below.  All other provisions of the policy remain unchanged.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | | | |

G-123846-C27 7/01

**HEALTHCARE PROVIDERS**
**PROFESSIONAL LIABILITY INSURANCE ENDORSEMENT**

**NEVADA AMENDATORY CHANGES ENDORSEMENT**

It is hereby agreed that Common Policy Conditions, Section VII. CONCEALMENT, MISREPRESENTATION, FRAUD is deleted in its entirety and replaced with the following:

**VII.    CONCEALMENT, MISREPRESENTATION, FRAUD**

This policy may be canceled with 30 days notice in any case of fraud by **you** relating to it.  It may also be cancelled with 30 days notice and we may deny any **claim** if **you** intentionally conceal or misrepresent a material fact or circumstance concerning:

A.   this policy;
B.   any covered property or **your** interest in the covered property; or
C.   this insurance.

This endorsement is a part of **your** policy and takes effect on the effective date of **your** policy, unless another effective date is shown below.  All other provisions of the policy remain unchanged.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | ENDORSEMENT EFFECTIVE DATE |

G-123816-C27 (12/2001)