# EXHIBIT C

# EXHIBIT C

**ACOM**
NIA C. KILLEBREW, ESQ.
Nevada Bar No.: 004553
GERALD I. GILLOCK, ESQ.
Nevada Bar No.: 00051
GILLOCK, MARKLEY & KILLEBREW, P.C.
428 So. 4th Street
Las Vegas, NV 89101
(702) 385-1482
Attorneys for Plaintiffs
Gwendolyn Martin and Lovey Martin

**FILED**

MAR 19  3 08 PM '09

CLERK OF THE COURT

ELECTRONICALLY SERVED
03/27/2009 01:29:32 PM

## DISTRICT COURT

## CLARK COUNTY NEVADA

*****

GWENDOLYN MARTIN and
LOVEY MARTIN,

                    Plaintiffs,

vs.

ENDOSCOPY CENTER OF SOUTHERN
NEVADA LLC, a Nevada Limited Liability
Company; GASTROENTEROLOGY
CENTER OF NEVADA LLP (DESAI);
DIPAK DESAI, M.D.;
HARI OM LIMITED PARTNERSHIP;
SAI K LLC; ELADIO CARRERA, M.D.;
KEITH MATHAHS, CRNA; LINDA
McGREEVY, RN; PEGGY TAGLE, RN;
LISA FRANKS, P.A.-C.; CLIFFORD
CARROL, M.D.; KATHY L. GRINDLE, RN;
KATHLEEN MALEY, RN aka
KATIE MALEY, RN; JEFF KRUEGER, RN;
MARY GREAR, R.Ph.; MARY GREAR, LLC
d/b/a PHARMACY CONSULTING SERVICES
GROUP; THOMAS C. YEE, M.D.;
THOMAS C. YEE/LEIGH VANCE/ROLAND
TIO/EDWIN ADOLFO, MD'S
PROFESSIONAL ANESTHESIA
CONSULTANTS LTD.; LEIGH VANCE, M.D.;
ROLAND TIO, M.D.; EDWIN ADOLFO, M.D.;
SATISH SHARMA, M.D.; SATISH K.
SHARMA M.D. P.C.; ADVANCED PAIN
MANAGEMENT CENTER, LLC;
TONYA RUSHING; BROADLANE, INC., a
Delaware Corporation; BEN VENUE
LABORATORIES, INC., a Delaware
Corporation; TEVA PARENTERAL
MEDICINES, INC., formerly known as SICOR
PHARMACEUTICALS, INC.;

**CASE NO.:   A558827**

**DEPT. NO.:  VIII**

**SECOND AMENDED
COMPLAINT AND DEMAND
FOR JURY TRIAL**

**ARBITRATION EXEMPTION
CLAIMED:
MEDICAL MALPRACTICE
AND CLAIMS IN EXCESS OF
$50,000.00**

1  SICOR, Inc., a Delaware Corporation; )
2  BAXTER HEALTHCARE CORPORATION, )
   a Delaware Corporation; )
3  McKESSON MEDICAL-SURGICAL INC., )
   a Delaware Corporation; VED GREEN )
   VALLEY, INC. d/b/a GREEN VALLEY )
4  DRUGS; QUALITY CARE CONSULTANTS )
   LLC, a Nevada Limited Liability Company; )
5  DOES I through XX; and ROE )
   CORPORATIONS I through XX, inclusive, )
6                                    )
   _____ )
7             Defendants.            )

COMES NOW, Plaintiffs, GWENDOLYN MARTIN and LOVEY MARTIN, by and

through their attorneys of record, NIA C. KILLEBREW ESQ. and GERALD I. GILLOCK, ESQ

of GILLOCK, MARKLEY & KILLEBREW, P.C., and hereby complain and allege as follows:

**I.**

**PARTIES AND JURISDICTION**

1.     Plaintiff, GWENDOLYN MARTIN, is, and at all times relevant hereto was, a citizen

of the State of Nevada.

2.     Plaintiff, LOVEY MARTIN, is, and at all times relevant hereto was, a citizen of

the State of Nevada.

3.     Upon information and belief, ENDOSCOPY CENTER OF SOUTHERN NEVADA

LLC, (hereinafter referred to as the "CLINIC") is a Nevada Limited Liability Company, chartered by

and existing under and by virtue of the laws of the State of Nevada, having its principal place of

business in Las Vegas, Nevada.

4.     GASTROENTEROLOGY CENTER OF NEVADA LLP (DESAI) (hereinafter

referred to as "GCN") is, and at all times relevant hereto was, a medical facility duly licensed to do

business in the State of Nevada pursuant to NRS 630.0135, with its principal place of business in Las

Vegas, Nevada.

5.     DIPAK DESAI, M.D. (hereinafter "DESAI"), is and was at all relevant times herein, a

physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

6. HARI OM LIMITED PARTNERSHIP (hereinafter "HARI OM"), is, and was at all times relevant herein, a Nevada Limited Partnership, chartered by and existing under and by virtue of the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

7. SAI K LLC (hereinafter "SAI"), is, and was at all times relevant herein, a Nevada Limited Liability Company, chartered by and existing under and by virtue of the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

8. ELADIO CARRERA, M.D. (hereinafter referred to as the "OPERATING PHYSICIAN") is, and was at all relevant times herein, a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

9. KEITH MATHAHS, CRNA (hereinafter referred to as "CRNA") is, and was at all relevant times herein, a Certified Registered Nurse Anesthetist licensed to practice in the State of Nevada.

10. LINDA McGREEVY, RN (hereinafter referred to as "RN") is, and was at all relevant times herein, a Registered Nurse licensed to practice nursing in the State of Nevada.

11. PEGGY TAGLE, RN (hereinafter referred to as "RN") is, and was at all relevant times herein, a Registered Nurse licensed to practice nursing in the State of Nevada.

12. LISA FRANKS, P.A.-C. (hereinafter "GASTRO"), is and was at all times relevant herein, a physician and/or physician's assistant and/or nurse practitioner and/or clinic licensed to practice medicine or provide medical care in the State of Nevada.

13. CLIFFORD CARROL, M.D. (hereinafter "GASTRO"), is and was at all times relevant herein, a physician and/or physician's assistant and/or nurse practitioner and/or clinic licensed to practice medicine or provide medical care in the State of Nevada.

14.     KATHY L. GRINDLE, RN (hereinafter referred to as "CHARGE NURSE") is, and was at all relevant times herein, a Registered Nurse licensed to practice nursing in the State of Nevada.

15.     KATHLEEN MALEY, RN aka KATIE MALEY, RN (hereinafter "MALEY"), is and was at all relevant times herein, a Registered Nurse licensed to practice nursing in the State of Nevada.

16.     JEFF KRUEGER, RN (hereinafter "KRUEGER"), is and was at all relevant times herein, a Registered Nurse licensed to practice nursing in the State of Nevada.

17.     MARY GREAR, R.Ph (hereinafter "SUPERVISING PHARMACIST"), is, and was at all relevant times herein, a pharmacist and/or pharmacy licensed to practice in the State of Nevada.

18.     MARY GREAR, LLC d/b/a PHARMACY CONSULTING SERVICES GROUP (hereinafter "SUPERVISING PHARMACIST"), is, and was at all times relevant herein, a Nevada Limited Liability Company, chartered by and existing under and by virtue of the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

19.     THOMAS C. YEE, M.D. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

20.     THOMAS C. YEE/LEIGH VANCE/ROLAND TIO/EDWIN ADOLFO, MD'S PROFESSIONAL ANESTHESIA CONSULTANTS LTD. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a Nevada Limited Partnership, chartered by and existing under and by virtue of the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

21. SATISH SHARMA, M.D. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

22. SATISH K. SHARMA M.D. P.C. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a corporation chartered and existing under and by virtue of the laws of the State of Nevada, with its principal place of business in the State of Nevada.

23. ADVANCED PAIN MANAGEMENT CENTER, LLC, (hereinafter "ANESTHESIOLOGIST") is, and was at all times relevant herein, a Nevada Limited Liability Company, chartered by and existing under and by virtue of the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

24. LEIGH VANCE, M.D. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

25. ROLAND TIO, M.D. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

26. EDWIN ADOLFO, M.D. (hereinafter "ANESTHESIOLOGIST"), is, and was at all times relevant herein, a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapter 630.

27. TONYA RUSHING (hereinafter "RUSHING"), is and was at all relevant times herein, a citizen of the State of Nevada.

28. BROADLANE, INC., (hereinafter referred to as "BROADLANE") is, and was at all relevant times referenced herein, a corporation chartered and existing under and by virtue of the laws

of the State of Delaware, with its principal place of business in the State of Texas and is and was in the business of marketing, distributing, and selling propofol and other medical products utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC.

29.     BEN VENUE LABORATORIES, INC., (hereinafter referred to as "BEN VENUE") is, and was at all relevant times referenced herein, a corporation chartered and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the State of Ohio, and is and was in the business of marketing, distributing, and selling propofol and other medical products utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC.

30.     Defendant, TEVA PARENTERAL MEDICINES, INC., formerly known as SICOR PHARMACEUTICALS, INC., and SICOR, INC. (hereinafter collectively referred to as "SICOR") are, and were at all relevant times herein, corporations chartered by and existing under and by virtue of the laws of the State of Delaware, with their principal place of business in the State of California and are and were in the business of manufacturing, marketing, distributing, and selling propofol and other medical products utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC.

31.     Defendant, BAXTER HEALTHCARE CORPORATION (hereinafter referred to as "BAXTER") is, and was at all relevant times herein, a corporation chartered by and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the State of Illinois and is and was in the business of  manufacturing, marketing, distributing, and selling propofol and other medical products utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC.

32.     Upon information and belief, Defendant, McKESSON MEDICAL-SURGICAL INC. (hereinafter referred to as "McKESSON") is, and was at all relevant times herein, a corporation chartered by and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the State of California and is and was in the business of marketing, distributing, and selling propofol and other medical products utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC.

33.     Upon information and belief, VED GREEN VALLEY, INC. d/b/a GREEN VALLEY DRUGS (hereinafter referred to as "SUPPLYING PHARMACIST/PHARMACY"), is, and was at all relevant times herein, a pharmacist and/or pharmacy licensed to practice in the State of Nevada and is and was in the business of marketing, distributing, and selling propofol and other medical products utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC.

34.     Jurisdiction is conferred pursuant to NRS 14.080 in so far as Defendants, BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY manufactured, marketed, distributed and/or sold propofol, which was administered to Plaintiff in connection with the medical procedure(s) at the CLINIC in Nevada. It is reasonably foreseeable to Defendants, BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY, that when its products entered the State of Nevada, that Defendants could be expected to be sued in the state where its products caused the injury.

35.     Jurisdiction is appropriate under the Due Process Clause.  Upon information and belief, Defendants, BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY were aware of the national distribution system and as a

consequence of that awareness, Defendants indirectly and/or directly served the national market and derived economic benefit therefrom. As such, Defendants could reasonably anticipate being subject to suit in any forum within that market where their product caused injury.

36.     Upon information and belief, QUALITY CARE CONSULTANTS LLC, (hereinafter referred to as "INSPECTION ENTITY") is, and was at all relevant times referenced herein, a Nevada Limited Liability Company, chartered by and existing under and by virtue of the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

37.     The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants, DOES I through XX, inclusive, and Defendants, ROE CORPORATIONS I through XX, inclusive, are unknown to Plaintiff(s), and are believed to be owners, operators, partners and/or managing agents of the CLINIC, physicians, certified registered nurse anesthetists, registered nurses, physician's assistants, medical assistants/technicians, pharmacists or other health care providers who provided care and treatment to Plaintiff and/or who supervised those providing care and treatment to Plaintiff, owners, operators, partners and/or managing agents of GASTRO, SUPERVISING PHARMACIST/PHARMACY, ANESTHESIOLOGIST and/or INSPECTION ENTITY, and/or are manufacturers, marketers, distributors, suppliers and/or sellers of anesthetic agents and medical devices, including but not limited to the "spike" or "vent spike" utilized to facilitate multiple access to propofol vials, utilized by physicians and health care providers in connection with the provision of anesthesia services to patients at the CLINIC at the relevant time periods who, therefore, sue(s) said Defendants by such fictitious names but are believed to be agents, servants, and/or employees of Defendants.  Plaintiff(s)  is/are informed and believe(s), and therefore allege(s), that each of the Defendants designated as a DOE and/or ROE CORPORATION are responsible in some manner for the events and happenings herein referred to, and caused injury and damages proximately thereby to

Plaintiff(s), as herein alleged; that such DOE Defendants and ROE CORPORATIONS Defendants were the agents, servants, or employees of each other and, in doing the things herein alleged, each was acting within the scope and course of said agency, servitude and employment, with the knowledge, permission and consent of the other Defendants. Plaintiff(s) will ask leave of this Court to amend this Complaint to insert the true names and capacities of said DOES I through XX, inclusive and ROE CORPORATIONS I through XX, inclusive, when the same have been ascertained by Plaintiff(s), together with the appropriate charging allegations and to join such Defendants in this action.

38.     At all times relevant herein, Defendants, and each of them, were the agents, servants, partners and employees of each and every other Defendant, and were acting within the course and scope of their agency, partnership and employment and, to the extent permitted by law, are jointly and severally liable.

## II.

## GENERAL FACTUAL ALLEGATIONS

39.     Upon information and belief, Defendant, CLINIC, owned and operated an endoscopy center located at 700 Shadow Lane, Clark County, Nevada and provided anesthesia services in connection with its provision of endoscopy procedures to its patients.

40.     Upon information and belief, Defendant, DESAI, was the principal owner of the CLINIC and/or HARI OM and/or SAI, and was the medical director and/or operations manager of the CLINIC during the relevant time period.

41.     Defendant, OPERATING PHYSICIAN, performed invasive medical procedures requiring anesthesia at the Defendant CLINIC upon the Plaintiff.

42.     Defendants, CRNA and RN also performed, assisted and/or observed physicians

and/or other health care providers in the performance of medical procedures, including the administration of anesthesia, at the CLINIC.

43.     Defendants, CHARGE NURSE, assisted in the management of the CLINIC, including, ordering of anesthesia and establishing nursing and/or other medical policies and procedures, and also performed, assisted and/or observed physicians and/or other health care providers in the performance of medical procedures including the administration of anesthesia, at the CLINIC.

44.     Defendants, MALEY and/or KRUEGER, assisted in the management of the CLINIC, including, ordering of anesthesia and establishing nursing and/or other medical policies and procedures, and also performed, assisted and/or observed physicians and/or other health care providers in the performance of medical procedures including the administration of anesthesia, at the CLINIC.

45.     Defendant, GASTRO, referred Plaintiff to the Defendant CLINIC where invasive medical procedures requiring anesthesia were performed upon Plaintiff.

46.     Defendant, SUPERVISING PHARMACIST, established policies and procedures for and supervised the ordering, supplying, dispensing and/or administration of anesthesia at the CLINIC.

47.     Defendants, ANESTHESIOLOGIST, performed, assisted, supervised and/or observed physicians, CRNAs, RNs and/or other health care providers in the performance of medical procedures including the administration of anesthesia at the CLINIC.

48.     Upon information and belief, Defendant RUSHING was the chief operating officer, chief executive officer and/or office administrator of the CLINIC and participated in the management of the CLINIC, including but not limited to contracting for professional services, ordering of

anesthesia, billing, establishing CLINIC policies and procedures and supervision of CLINIC personnel including CRNAs and RNs.

49.    During the relevant time period (hereinafter referred to as "relevant time period"), Defendants treated Plaintiff with contaminated medical equipment and/or medications that were previously exposed to unknown persons at the CLINIC, which included utilizing propofol vials manufactured, marketed, distributed and/or sold by BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY during the relevant time period.

50.    Contaminated vials of propofol are defective products unfit for its intended use as the contaminated propofol vials exposes persons to communicable infectious diseases from the prior persons that the contaminated propofol vials were used upon.

51.    Despite the knowledge of the dangers posed by these unsafe procedures and practices, Defendants concealed and suppressed these material facts that they were bound to disclose in an effort to mislead Plaintiff and others and prevent them from discovering the concealed or suppressed facts.

52.    Plaintiff underwent a certain invasive medical procedures on September 20, 2007 and September 21, 2007, requiring the utilization of anesthesia services at the CLINIC at the relevant time period, as provided by DESAI, OPERATING PHYSICIAN, CRNA, RN, CHARGE NURSE, MALEY, KRUEGER, SUPERVISING PHARMACIST, ANESTHESIOLOGIST and/or RUSHING. Plaintiff is informed and believes that she was exposed to contaminated propofol vials at the CLINIC on September 21, 2007 which resulted in Plaintiff contracting an INFECTIOUS DISEASE. Health officials and health care providers recommended that Plaintiff be tested for Hepatitis B, Hepatitis C and HIV and continue to undergo testing in the future for all of these infectious diseases.

53.   Plaintiff was tested and diagnosed with Hepatitis C (hereinafter referred to as "INFECTIOUS DISEASE") after undergoing the procedures at the CLINIC, and is also at risk for contraction of other blood borne pathogens all due to the conduct of the Defendants.

54.   Attached hereto as Exhibits "1" ,"2", "3", "4", "5" and "6" are true and correct copies of the merit affidavits of Thomas Hargrave, M.D., Richard A. Singer, M.D., George Cox, CRNA and Dana Sutter, RN, in support of Plaintiffs' claims which are incorporated herein by reference.

### III.

### NEGLIGENCE
### (As to CLINIC, GASTRO, DESAI, OPERATING PHYSICIAN, CRNA, RN, CHARGE NURSE, MALEY, KRUEGER, SUPERVISING PHARMACIST, & ANESTHESIOLOGIST Defendants)

55.   Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

56.   At all times mentioned herein, Defendants knew, or in the exercise of reasonable care should have known, that the providing of medical care and treatment was of such a nature that, if it was not properly given, it was likely to injure the persons to whom it was given.

57.   Plaintiff alleges that Defendants fell below the standard of care for health care providers who possess the degree of professional learning, skill and ability of other similar health care providers in failing to properly treat and/or supervise the treatment of Plaintiff.

58.   Plaintiff alleges that Defendants were negligent by failing to correctly treat and/or supervise the treatment of Plaintiff during medical procedures directly resulting in exposure to and contraction of INFECTIOUS DISEASES.

59.   As a direct and proximate result of the negligence and carelessness of Defendants in incorrectly treating and/or supervising the treatment of Plaintiff, Plaintiff was required to undergo

1 testing and has contracted an INFECTIOUS DISEASE.

2
3    60.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered
4 special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

5    61.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered
6 general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

7    62.    As a further result of Defendants' conduct, Plaintiff has had to retain the services of
8
9 attorneys in this matter, and therefore seeks reimbursement of attorneys' fees and costs.

10                                          IV.

11                              **RES IPSA LOQUITUR**
   **(As to CLINIC, DESAI, OPERATING PHYSICIAN, CRNA, RN, CHARGE NURSE,**
12        **MALEY, KRUEGER, SUPERVISING PHARMACIST and**
13                 **ANESTHESIOLOGIST Defendants)**

14   63.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though
15 fully set forth herein.

16   64.    The events herein described do not normally occur absent negligent conduct.
17
18 Moreover, Plaintiff contracted a foreign substance, that being an INFECTIOUS DISEASE, following
19 the medical procedure at the CLINIC, and an injury was suffered during the course of treatment to a
20 part of the body not directly involved in the treatment or proximate thereto.  Plaintiff therefore
21 invokes the doctrine of res ipsa loquitur against CLINIC,  DESAI, OPERATING PHYSICIAN,
22 CRNA, RN, CHARGE NURSE, MALEY, KRUEGER, SUPERVISING PHARMACIST and
23
24 ANESTHESIOLOGIST Defendants pursuant to N.R.S. 41A.100(1) (a) and (d).

25   65.    As a direct and proximate result of the negligence and carelessness of Defendants in
26 incorrectly treating and/or failing to supervise the treatment of Plaintiff, Plaintiff was required to
27 undergo testing and has contracted an INFECTIOUS DISEASE.

28   66.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered

special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

67.     As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

68.     As a further result of Defendants' conduct, Plaintiff has had to retain the services of attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

V.

**NEGLIGENT HIRING, TRAINING AND SUPERVISION**
**(As to CLINIC, DESAI, HARI OM, SAI, OPERATING PHYSICIAN, CHARGE NURSE, MALEY, KRUEGER, SUPERVISING PHARMACIST, ANESTHESIOLOGIST, RUSHING and GCN Defendants)**

69.     Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

70.     At all times mentioned herein, Defendants knew or in the exercise of reasonable care should have known, that providing of medical care and treatment was of such a nature that, if it was not properly given, it was likely to injure the persons to whom it was given. Further, Defendants owed a duty to Plaintiff to hire, train and/or supervise competent medical and staff personnel, including supervisors, adequately trained to provide care and treatment to its patients.

71.     At all times mentioned herein, Defendants established and/or followed unsafe medical practices, including the reuse of medical equipment and propofol vials, and/or instructed their employees and/or agents to follow these unsafe practices.

72.     As a result of the medical care and treatment provided by Defendants and Defendants' employees and/or agents, Defendants breached their duty to Plaintiff by failing to protect her from foreseeable harm, resulting in exposure to and contraction of INFECTIOUS DISEASES.

73.     As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff is required to undergo testing and has contracted an INFECTIOUS DISEASE.

74. Defendants' conduct demonstrated a conscious disregard of known accepted procedures, protocols, care and treatment, all with the knowledge or utter disregard that such conduct could or would expose Plaintiff to contracting an INFECTIOUS DISEASE.

75. Defendants' conduct was willful, reckless, malicious and in total disregard to the health and safety of the patients or, alternatively, was in conscious and deliberate disregard of known safety procedures, thereby justifying an award of punitive damages.

76. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

77. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

78. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

79. As a further result of Defendants' conduct, Plaintiff has had to retain the services of attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

## VI.

### CORPORATE NEGLIGENCE/VICARIOUS LIABILITY
### (As to CLINIC, DESAI, HARI OM, SAI, OPERATING PHYSICIAN, CHARGE NURSE, MALEY, KRUEGER, SUPERVISING PHARMACIST, ANESTHESIOLOGIST, RUSHING and GCN Defendants)

80. Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

81. Defendants' agents and/or employees were acting in the scope of their employment, under Defendants' control and direction, and in furtherance of Defendants' interests at the time their actions caused injury to Plaintiff.

82. Defendants are vicariously liable for damages resulting from its agents' and/or

1  employees' negligent actions against Plaintiff during the scope of their employment.

2
3      83.    As a direct and proximate result of the negligence and carelessness of Defendants,
4  Plaintiff is required to undergo testing and has contracted an INFECTIOUS DISEASE.

5      84.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered
6  special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

7      85.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered
8
9  general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

10     86.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered
11  punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

12     87.    As a further result of Defendants' conduct, Plaintiff has had to retain the services of
13  attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

14                                          VII.
15

16                            NEGLIGENT REFERRAL
                              (As to GASTRO Defendants)
17

18     88.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though
19  fully set forth herein.

20     89.    As an employee, owner and/or agent of the CLINIC and/or GCN, Defendant
21  GASTRO knew or should have known of the unsafe practices of the CLINIC at the time of his
22  medical consultation and/or referral to the CLINIC.
23

24     90.    Despite having knowledge of the unsafe practices instituted and employed at the
25  CLINIC, Defendant negligently referred Plaintiff to the CLINIC for an invasive medical procedure,
26  that exposed Plaintiff to contracting an INFECTIOUS DISEASE.

27     91.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered
28  special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

1    92.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered

2    general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

3

4    93.    As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered

5    punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

6    94.    As a further result of Defendants' conduct, Plaintiff has had to retain the services of

7    attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

8
                                              **VIII.**
9

10   **BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**
     **(As to BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and SUPPLYING**
11                **PHARMACIST/PHARMACY Defendants)**

12   95.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though

13   fully set forth herein.

14
     96.    In March 1999, Defendant SICOR gave Defendant BAXTER the exclusive right to
15
16   market propofol manufactured by Defendant SICOR in the United States. The agreement between

17   Defendant SICOR and Defendant BAXTER extended through January 1, 2009.

18   97.    Plaintiff is informed and believes and thereupon alleges that propofol provided by

19   BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING
20
     PHARMACIST/PHARMACY was used to provide anesthetic for the operation wherein Plaintiff was
21
22   infected.

23   98.    At the time that BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON

24   and/or SUPPLYING PHARMACIST/PHARMACY manufactured, distributed, marketed, and sold

25   propofol to the CLINIC, Defendants BROADLANE, BEN VENUE, SICOR, BAXTER,
26
     McKESSON and/or SUPPLYING PHARMACIST/PHARMACY knew that the propofol was being
27
28   used or potentially was being used in an endoscopy surgery center, and impliedly warranted that the

propofol was safe and fit for the purpose for which the product was ordinarily used at an endoscopy surgery center, which was for anesthesia.

99.     Plaintiff reasonably relied upon the skill and judgment of BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY as to whether the propofol sold was safe and fit for its intended use as anesthesia in an endoscopy surgery center.

100.    Contrary to such implied warranty, the larger propofol vials were not safe or fit for their intended use as anesthesia in an endoscopy surgery center, and was and is unreasonably dangerous and unfit for use as anesthesia in an endoscopy surgery center because of the foreseeable misuse of treating multiple patients from the same larger propofol vial.

101.    As a direct and proximate result of the conduct of Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY, Plaintiff has suffered special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

102.    As a direct and proximate result of the conduct of Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY, Plaintiff has suffered general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

103.    As a direct and proximate result of the conduct of Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY, Plaintiff is entitled to punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

104.    As a further result of Defendants' conduct, Plaintiff has had to retain the services of attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

IX.

**STRICT PRODUCT LIABILITY–DANGEROUSLY DEFECTIVE PRODUCT**
**(As to BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING**
**PHARMACIST/PHARMACY Defendants)**

105.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

106.    In 1983, the Annuals of Internal Medicine published an article entitled "Hepatitis B Virus Transmission Associated With A Multiple-Dose Vial In A Hemodialysis Unit" found at Ann.Intern.Med. 1983; 99; 330-3. Plaintiff is informed and believes and thereupon alleges that the potential for transmission of Hepatitis B or C or HIV from administration of medicine to two or more patients from the same vial has been known since at least 1983.

107.    Propofol (i.e., "Diprivan") was initially approved for marketing on October 2, 1989 for use as an anesthetic in outpatient and inpatient procedures.

108.    Plaintiff is informed and believes and thereupon alleges that, following the launch of the original formulation of propofol (i.e., "Diprivan"), that the original manufacturer (i.e., ICI Pharmaceuticals; which later became Zeneca Pharmaceuticals) and the FDA began to receive reports of infections associated with the failure of health care providers in the United States to use appropriate aseptic techniques in the administration of propofol; which reports raised concerns among Zeneca, the FDA and the Centers for Disease Control and Prevention (the "CDC") about propofol multi-dosing and its potential contaminant effect.

109.    On June 29, 1990, the CDC reported in the MMWR (June 29, 1990/39(25); 426, 247, 433 that 48% to 90% of anesthesia personnel were reusing syringes to administer propofol to multiple patients:

Two recent surveys of anesthesia personnel show that aseptic technique and infection control practices are frequently not implemented during administration of anesthesia. In these surveys, from 48% to 90% of respondents reused syringes to multiple patients.

110. Plaintiff is informed and believes and thereupon alleges that, between June 1990 and February 1993, the CDC conducted investigations at seven hospitals with unusual outbreaks of infections after surgical procedures using propofol and, focusing on four clusters of post operative infections in four states, the CDC concluded that contamination occurring from propofol administration was caused by mishandling the propofol.

111. On July 6, 1990, Nancy E. Nazari of Stuart Pharmaceuticals sent a "Dear Doctor" letter to health care professionals regarding propofol (i.e., "Diprivan") discussing, among other things, potential multiple-dose vial contamination.

112. On February 5, 1991, Nancy E. Nazari of Stuart Pharmaceuticals sent a "Dear Doctor" letter to health care professionals regarding propofol (i.e., "Diprivan") discussing, among other things, potential multiple-dose vial contamination.

113. On July 20, 1995, The New England Journal of Medicine published an article entitled "Postoperative Infections Traced to Contamination of an Intravenous Anesthetic, Propofol" that describes the above-referenced CDC investigation and, in addition, provided in pertinent part that anesthesia personnel were in fact reusing multidose vials on multiple patients despite written recommendations to the contrary:

> Despite the written recommendations of professional associations, such as the American Society of Anesthesiologists and the American Association of Nurse Anesthetists, which specifically advocate the use of aseptic techniques during the handling of medications, several authors have reported poor compliance with aseptic techniques and infection-control practices by anesthesia personnel. Contamination of multidose vials, use of a single syringe to administer medication to different patients, assembling infusion equipment far in advance of use, and contamination of syringes and catheters have all been implicated in other outbreaks. Studies show that reuse of multidose

Page 20

> vials can cause contamination of the medication in the vials and that contamination can occur during the opening of a glass vial whose surface has not been disinfected. · Injecting medications into intravenous catheters can cause syringes to become contaminated even if the needle is changed, so that using common syringes to administer medication to different patients can transmit infectious agents. (Emphasis added).

114. On May 5, 2000, Defendant SICOR (under its then name "GensiaSicor Pharmaceuticals, Inc.") filed a Suitability Petition with the FDA requesting permission to supplement an abbreviated new drug application ("ANDA") for "100mg/10mL, single use vial" of propofol and Defendant SICOR stated that "a smaller vial size is safer in that it may reduce the temptation for dosing multiple patients from a single container thereby reducing opportunities for microbial contamination." (Emphasis added).

115. On September 17, 2001, Defendant SICOR (under its then name "GensiaSicor Pharmaceuticals, Inc.") filed a Suitability Petition with the FDA requesting permission to submit an abbreviated new drug application ("ANDA") for 2000mg/200mL vials of propofol. On or about December 17, 2001, the FDA rejected such petition; observing that 20 mL was the propofol "dose commonly used for propofol induction of anesthesia" and the FDA stated that larger doses "could make multi-dosing much more tempting and, hence, more likely."

116. Plaintiff is informed and believes and thereupon alleges that, in or about 2002, 12 patients contracted Hepatitis C at a Manhattan physician's endoscopy center caused by medication drawn through multi-use vials.

117. Plaintiff is informed and believes and thereupon alleges that, in or about 2002, 38 patients contracted Hepatitis C at a Manhattan pain clinic caused by medication drawn through multi-use vials.

118. In 2003, the World Health Organization reported that single-dose vials should be used and that "the use of multi-dose vials has been reported to be a potential source of infections

1 in 19 studies." Bulletin of the World Health Organization 2003, 81 (7), entitled "Best infection

2 control practices for intradermal, subcutaneous, and intramuscular needle injections." One of the 19

3
4 studies referenced involved hepatitis caused by "preparation of multi-dose heparin", which heparin is

5 another Baxter product. (See Oren, "A common-source outbreak of fulminant Hepatitis B in a

6 hospital." Annals of Internal Medicine 1989; 110:691-8.

7        119.    In June 2007, the FDA issued an alert that referenced reports of "several clusters of

8
9 patients who have developed fever, chills, and body aches shortly after receiving propofol from 7

10 different facilities in 4 different states and stated that the same propofol vial was used on multiple

11 patients: "To date, all affected patients received propofol for sedation in gastrointestinal suites.

12 Some facilities where the propofol was administered used propofol vials, intended only for single-

13 patient use, for more than one patient."

14
       120.    Plaintiff is informed and believes and thereupon alleges that, because of the hepatitis
15
16 outbreaks in New York described above, the New York State Health Commissioner; Dr. Richard

17 Daines, and the New York City Health Commissioner; Dr. Thomas Frieden, have called for an

18 outright ban on multi-dose vials.

19
       121.    Multiple use of propofol by endoscopy surgery centers on more than one patient was a
20
   foreseeable misuse of propofol vials.
21

22        122.    Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or

23 SUPPLYING PHARMACIST/PHARMACY knew or should have known that the smaller vial sizes

24 were safer for endoscopy surgery centers given the amount of propofol typically used by such centers

25 and the economic allure to such centers to use instead of discarding remaining propofol in a larger

26
   vial. As set forth above, Defendant SICOR expressly stated that "a smaller vial size is safer in that it
27
28 may reduce the temptation for dosing multiple patients from a single container thereby reducing

1

opportunities for microbial contamination." (Emphasis added).

2

3      123.    Plaintiff is informed and believes and thereupon alleges that Defendants
4  BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING
5  PHARMACIST/PHARMACY knew of incidents prior to the shipment of the propofol used in this
6  case wherein a surgery center reportedly used propofol on more than one patient.

7      124.    At the time the propofol was shipped, propofol in larger vial sizes was unreasonably
8
9  dangerous for use in an endoscopy surgery center, that is dangerous to any extent beyond that which
10 would be contemplated by the ordinary and prudent patient using such product, considering the
11 characteristics of the product (including, but not limited to, the much smaller propofol dosage
12 normally required for one patient undergoing colonoscopy or endoscopy surgery), its propensities,
13 risks (including not limited to the potential for transmitting infectious disease such as Hepatitis B or
14
15 C or HIV if propofol from the same vial was used on multiple patients), its dangers and uses.

16     125.    Plaintiff is informed and believes and thereupon alleges that the conduct of
17 Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING
18 PHARMACIST/PHARMACY in manufacturing, distributing, marketing and/or selling propofol in
19 larger vials to endoscopy surgery centers was willful, reckless, malicious and in total disregard to the
20
21 health and safety of the patients or, alternatively, was in conscious and deliberate disregard of known
22 safety procedures, thereby justifying an award of punitive damages.

23     126.    As a direct and proximate result of the conduct of Defendants BROADLANE,
24 BEN     VENUE,     SICOR,     BAXTER,     McKESSON     and/or     SUPPLYING
25 PHARMACIST/PHARMACY, Plaintiff has suffered special damages in an amount in excess of Ten
26
27 Thousand Dollars ($10,000.00).

28

127. As a direct and proximate result of the conduct of Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY, Plaintiff has suffered general damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

128. As a direct and proximate result of the conduct of Defendants BROADLANE, BEN VENUE, SICOR, BAXTER, McKESSON and/or SUPPLYING PHARMACIST/PHARMACY, Plaintiff is entitled to punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

129. As a further result of Defendants' conduct, Plaintiff has had to retain the services of attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

## X.

### NEGLIGENCE
### (As to INSPECTION ENTITY Defendant)

130. Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

131. Defendant QUALITY CARE CONSULTANTS is a Nevada LLC and Dr. Ikramullah Khan and Dr. Javaid Anwar are the "Managers" of Quality Care Consultants.

132. Plaintiff is informed and believes and thereupon alleges that Dr. Ikramullah Khan and Dr. Javaid Anwar have been doing business in the State of Nevada under the name "Quality Care Consultants" since 2004 but are presently not aware of the exact type of business entity, if any, conducting such business prior to the formation of the Nevada LLC named as a Defendant herein ("Quality Care Consultants"). Plaintiff reserves the right to amend the complaint to add any additional entities owned by Dr. Ikramullah Khan and Dr. Javaid Anwar that did business under the name of Quality Care Consultants with the CLINIC in this case. The Nevada LLC named as a

Defendant herein ("Quality Care Consultants") and any and all entities owned by Dr. Ikramullah Khan and Dr. Javaid Anwar that did business under the name of Quality Care Consultants with the CLINIC shall hereinafter be referred to as "QCC."

133. Plaintiff is informed and believes that, from approximately March 2004 to the present time, Dr. Ikramullah Khan was the Vice President of Health Care Services for the MGM MIRAGE Corporation.

134. Plaintiff is informed and believes that, from 2004 through at least 2006, Dr. Ikramullah Khan was a member of the Physicians Advisory Council for Quality Improvement and Utilization Management for Blue Cross and Blue Shield of Colorado.

135. Plaintiff is informed and believes that, given his position with the MGM MIRAGE Corporation, Dr. Ikramullah Khan was in a position to influence decisions regarding what doctors and health care providers would be added to its preferred list of doctors and health care providers, including but not limited to, being in a position to influence decisions regarding whether or not the CLINIC was added to such preferred list.

136. Plaintiff is informed and believes that, during the time period that Plaintiff had surgery at the CLINIC, Dr. Javaid Anwar was a member of the Nevada State Board of Medical Examiners and that, given his role as one of the ultimate decision makers in regulatory matters concerning doctors and health care providers, Dr. Anwar was in a position of influence regarding doctors and health care providers.

137. Plaintiff is informed and believes that QCC, through Dr. Ikramullah Khan or Dr. Javaid Anwar, sent letters to numerous doctors and health care providers soliciting employment to "review and assess the current medical facilities, programs, policies and procedures" and that "[t]his would include onsite review of all facilities in Las Vegas and meetings with physicians and

managerial staff at each location." The letters further stated that "[o]n its completion, we will make recommendations for institution of policies and procedures for delivery of quality care in accordance with national standards." The "Global Fee" charged by QCC for the foregoing services was Twenty-Five Thousand Dollars ($25,000.00). In addition, QCC also proposed to provide "ongoing monitoring services on a monthly basis" after providing the initial report of its onsite review and "recommendations for institution of policies and procedures . . . ."

138. Plaintiff is informed and believes that the CLINIC hired QCC to perform the above-referenced onsite review and "make recommendations for institution of policies and procedures for delivery of quality care in accordance with national standards" and that, in performing such activities, QCC was negligent in failing to detect the dangerous procedures that the CLINIC was using regarding the administration of anesthesia (including, but not limited to, inappropriate aseptic techniques) and/or QCC was negligent in making appropriate recommendations to stop such dangerous procedures.

139. Plaintiff is informed and believes and thereupon alleges that the conduct of QCC in conducting an on-site review and making "recommendations for institution of policies and procedures for delivery of quality care in accordance with national standards" was willful, reckless, malicious and in total disregard to the health and safety of patients or, alternatively, was in conscious and deliberate disregard of known safety procedures (including, but not limited to, being in conscious and deliberate disregard of known safety procedures or standards for quality improvement inspections) thereby justifying an award of punitive damages.

140. As a direct and proximate result of the conduct of QCC, Plaintiff has suffered special damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

141. As a direct and proximate result of the conduct of QCC, Plaintiff has suffered general

1  damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

2
   142.    As a direct and proximate result of the conduct of QCC, Plaintiff is entitled to
3
4  punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

5     143.    As a further result of Defendants' conduct, Plaintiff has had to retain the services of

6  attorneys in this matter, and therefore seeks reimbursement of attorneys' fees and costs.

7
                                          **XI.**
8
                          **NEGLIGENT UNDERTAKING**
9                      **(As to INSPECTION ENTITY Defendant)**

10    144.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though
11
   fully set forth herein.
12

13    145.    Plaintiff is informed and believes that QCC undertook on-site review and issued

14  "recommendations for institution of policies and procedures for delivery of quality care in

15  accordance with national standards" for the CLINIC for the direct or indirect benefit of patients and

16  that, in performing such activities, QCC was negligent in failing to detect the dangerous procedures

17
   that the CLINIC was using regarding the administration of anesthesia (including, but not limited to,
18
19  inappropriate aseptic techniques) and/or QCC was negligent in failing to make appropriate

20  recommendations to stop such dangerous procedures.

21    146.    Plaintiff is informed and believes and thereupon alleges that the conduct of QCC in
22
   conducting an on-site review and making "recommendations for institution of policies and
23
   procedures for delivery of quality care in accordance with national standards" was willful, reckless,
24
25  malicious and in total disregard to the health and safety of patients or, alternatively, was in conscious

26  and deliberate disregard of known safety procedures (including, but not limited to, being in

27  conscious and deliberate disregard of known safety procedures or standards for quality improvement

28  inspections) thereby justifying an award of punitive damages.

1    147.    As a direct and proximate result of the conduct of QCC, Plaintiff has suffered special

2
     damages in an amount in excess of Ten Thousand Dollars ($10,000.00).
3

4    148.    As a direct and proximate result of the conduct of QCC, Plaintiff has suffered general

5    damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

6    149.    As a direct and proximate result of the conduct of QCC, Plaintiff is entitled to

7    punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

8
     150.    As a further result of Defendants' conduct, Plaintiff has had to retain the services of
9

10   attorneys in this matter, and therefore, seeks reimbursement of attorneys' fees and costs.

11                                              **XII.**

12                                  **LOSS OF CONSORTIUM**
                                      **(As to all Defendants)**
13

14   151.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though

15   fully set forth herein.

16   152.    That Plaintiff LOVEY MARTIN is the spouse of Plaintiff GWENDOLYN MARTIN,

17
     and has been her spouse at all times relevant to this Complaint.
18

19   153.    As a direct and proximate result of each of the Defendants' negligence, LOVEY

20   MARTIN has suffered loss of consortium and consequent severe emotional distress all to Plaintiff's

21   damage in excess of Ten Thousand Dollars ($10,000.00).

22   154.    As a further direct and proximate result of Defendants' negligence Plaintiff, LOVEY

23
     MARTIN has had to retain the services of attorneys and therefore seeks reimbursement of attorneys'
24

25   fees and costs.

26   \\\

27   \\\

28   \\\

# XIII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment against Defendants, and each of them, as follows:

1. For general damages in excess of $10,000.00;

2. For special damages in excess of $10,000.00;

3. For punitive damages in an amount to be determined at trial;

4. For reasonable attorneys' fees;

5. For costs of suit; and

6. For any such further relief this Court deems appropriate.

# XIV.

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand a trial by jury on all issues so triable.

DATED this _____ day of March, 2009.

GILLOCK, MARKLEY & KILLEBREW, P.C.

By: _____
NIA C. KILLEBREW, ESQ.
Nevada Bar No.: 004553
GERALD I. GILLOCK, ESQ.
Nevada Bar No.: 00051
GILLOCK, MARKLEY & KILLEBREW, P.C.
428 So. 4th Street
Las Vegas, NV 89101
(702) 385-1482
Attorneys for Gwendolyn Martin and Lovey Martin

# *EXHIBIT 1*

## AFFIDAVIT OF
## THOMAS B. HARGRAVE, M.D.

STATE OF CALIFORNIA )
                     ) ss:
COUNTY OF ALAMEDA )

I, Thomas B. Hargrave, M.D., am a physician duly licensed to practice medicine in the State of California since 1981. Attached hereto as exhibit A1" is a true and correct copy of my curriculum vitae setting forth my education, training and experience as a board certified gastroenterologist.

I am familiar with the standards of care for a gastroenterologist practicing at all times relevant to the care provided herein, including, but not limited to, the time periods from March 2004 through and including January of 2008. I am also familiar with the standards of care for the management and handling of medical devices and medications in connection with the provision of medical care for patients undergoing gastroenterology endoscopic procedures at all relevant times referenced herein.

I have had an opportunity to review relevant portions of the medical records of Gwendolyn Martin from the Endoscopy Center of Southern Nevada on Shadow Lane, which include the operative reports and anesthesia records relating to Ms. Martins's colonoscopy on September 20, 2007 and esophagogastroduodenoscopy on September 21, 2007 performed at that facility. I have also reviewed copies of her blood test results confirming her diagnosis of acute Hepatitis C, genotype 1a, in November 2007, together with bulletins from the Southern Nevada Health District and Centers for Disease Control and Prevention relating to its inspections and

findings of the facility in question.

The standards of care in connection with the provision of medical care and treatment and the management and handling of medical devices and medications mandates that strict sterile technique be implemented and followed for all patients receiving intravenous anesthetic medications. This includes, but is not limited to, utilizing aseptic technique by all health care providers while providing all types of invasive medical care and properly using medical devices and medications.

Failure of a gastroenterologist and/or any other health care provider(s) who may have provided medical care, and/or who oversaw, implemented, approved or failed to take action in response to the practices referenced respecting non-sterile anesthesia-related practices and/or inappropriate uses of medication(s) and/or medical devices, falls below the standard of care.

These violations of the standard of care caused and/or substantially contributed to the patient's contraction of Hepatitis C and possible exposure to other blood borne pathogens as reported and reviewed by the governmental entities, including the Southern Nevada Health District and Centers for Disease Control and Prevention.

All opinions set forth herein are stated to a reasonable degree of medical probability. I reserve the right to alter, modify and/or change the opinions expressed herein based upon receipt and review of additional information that may become available.

FURTHER AFFIANT SAYETH NAUGHT.

THOMAS B. HARGRAVE, M.D.

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☐ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], not Notary)

_____          _____
Signature of Document Signer No. 1            Signature of Document Signer No. 2 (if any)

State of California

County of _Alameda_

                                      Subscribed and sworn to (or affirmed) before me on this

                                      ___ day of _____, 20___, by

                                      (1) _____
                                                    Name of Signer

                                      proved to me on the basis of satisfactory evidence
                                      to be the person who appeared before me (.) (,)

                                                    (and

                                      (2) _____
                                                    Name of Signer

                                      proved to me on the basis of satisfactory evidence
                                      to be the person who appeared before me.)

```
LORETTA M. LEWIS
Commission # 1788726
Notary Public - California
Alameda County
My Comm. Expires Jul 6, 2011
```

                                      Signature _____
                                                    Signature of Notary Public

        Place Notary Seal Above

———————————————————— **OPTIONAL** ————————————————————

Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _5/5/08_          Number of Pages: _2_

Signer(s) Other Than Named Above: _____

[RIGHT THUMBPRINT OF SIGNER
Top of thumb here]   [RIGHT THUMBPRINT OF SIGNER
Top of thumb here]

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

Case 2:10-cv-00161-KJD-LRL Document 1-3 Filed 02/05/10 Page 35 of 68

# MedCURRICULUM VITAE

## THOMAS B. HARGRAVE III, M.D.

<u>Address:</u> East Bay Center for Digestive Health
3300 Webster St., Suite 312
Oakland, Calif. 94609    (510) 444-3297   Fax: (510) 444-6421

<u>Date of Birth:</u> 10/21/52

<u>Academic Training:</u>

Premedical: Yale University 1971–1975; B.S. Degree Biology
Medical:    UCLA School of Medicine 1975–1979; M.D..
Internship: UC San Francisco; Internal Medicine; 1979–1980
Residency: UC San Francisco; Internal Medicine 1980–1982
Fellowship: UC San Francisco: Gastroenterology; 1983–1985

<u>Licensure:</u>

California: # 00G445060
DEA Registration Through 2008
Certified: Am. Board Internal Medicine; September 15, 1982
Certified: Am. Board Int. Med., Gastroenterology; November 19, 1985

<u>Teaching Activities:</u>

Assistant Clinical Professor of Medicine, UCSF Dept. Med., 1987-
Clinical Instructor UCSF-Berkeley Joint Medical Program, 1985-2007

<u>Awards:</u>

<u>Yale University:</u>
Phi Beta Kappa 1974, 1975
Summa Cum Laude 1975
Distinction in the Major 1975
Edgar J. Boell Prize for Excellence in Biology 1975
Branford College Fellows Award (Highest Graduating GPA) 1975

<u>UCLA Medical School:</u>
Class President 1976-1978
Metro Goldwyn Mayer Scholarship 1975-1979
Franklin C. McClean Award: Academic Achievement 1979
UCLA Alumni Award: Medicine Dept. Academic Achievement 1979
UCLA Longmire Medal: Surgical Dept. Academic Achievement 1979
Alpha Omega Alpha Honor Medical Society 1978, 1979; Chapter President 1979

## CURRICULUM VITAE

## THOMAS B. HARGRAVE III, M.D.

### Medical Societies:

American Gastroenterological Association (AGA)
American Society of Gastrointestinal Endoscopy (ASGE)
California Medical Association (CMA)
Alameda Contra Costa Medical Society (ACCMA)
Northern California Society for Clinical Gastroenterology

### Hospital Affiliations:

Summit Medical Center, Oakland, Ca.: Active
Alta Bates Hospital, Berkeley, Ca.: Active
Merrithew Memorial Hospital, Martinez, Ca.: Provisional
Children's Hospital Oakland: Provisional Courtesy (Pediatric Biliary Procedures)
University of California, San Francisco: Teaching Associate

### Misc:

Chief of Gastroenterology, Summit Medical Center, 1992-1998
Chief of Gastroenterology, Hill Physicians Medical Group, 1994-2005
Member Board of Directors, Summit Medical Center, 1992-1994
Summit Medical Center Quality Assurance Committee, 1992-1998
Summit Medical Center Utilization Review Committee, 1992-1998
Summit Medical Center Pharmacy and Therapeutics Committee 1994-2001
Alameda Contra Costa Medical Society Liability Committee B, 1994-2000

*EXHIBIT 2*

## AFFIDAVIT OF THOMAS B. HARGRAVE, M.D.

STATE OF CALIFORNIA )
                         ) SS:
COUNTY OF ALAMEDA )

      I, Thomas B. Hargrave, M.D., being first duly sworn under oath, deposes and says:

      I am a Board Certified Gastroenterologist licensed to practice in the State of California. Attached hereto as an exhibit is a true and correct copy of my curriculum vitae setting forth my education, training and experience as a board certified gastroenterologist.

      This affidavit is an addendum to my affidavit previously submitted regarding Gwendolyn Martin and is meant to be incorporated by reference as though fully set forth therein. I have reviewed those items referenced in my original affidavit as well as a copy of the State of Nevada Health Division Bureau of Licensure and Certification deficiency reports and plans of correction for the Endoscopy Center of Southern Nevada on Shadow Lane.

      I am familiar with the standards of care for a gastroenterologist practicing at all times relevant to the care provided herein. I am also familiar with the standards of care for the management and handling of medical devices and medications in connection with the provision of medical care for patients undergoing endoscopic procedures at all relevant times referenced herein, including but not limited to, the time periods from March 2004 through and including January of 2008. I am also familiar with the standards of care of a gastroenterologist, physician=s assistant (PA) and/or advanced nurse practitioner (APN) practicing in the area of gastroenterology, including the performance of physical examinations, evaluations, indications, referrals and/or recommendations for endoscopic

1

procedures.

The records reflect that Gwendolyn Martin was seen in consultation by Lisa Franks PA-C/Clifford Carrol, M.D. on September 11, 2007, at the Gastroenterology Center of Nevada. The patient was referred by Lisa Franks PA-C/Clifford Carrol, M.D. to the Endoscopy Center of Southern Nevada for a colonoscopy, which was performed on September 20, 2007, and a gastroscopy, which was performed on September 21, 2007.

As referenced in my prior affidavit, I have had an opportunity to review the medical records of Gwendolyn Martin from the Endoscopy Center of Southern Nevada and Gastroenterology Center of Nevada, together with other items referenced in my first affidavit, including the deficiency reports and plans of correction issued by the State of Nevada Health Division Bureau of Licensure and Certification.

It is my opinion, to a reasonable degree of medical probability, that Lisa Franks PA-C/Clifford Carrol, M.D. who were employed by or associated with the Gastroenterology Center of Nevada, and referred a patient for a procedure at the Endoscopy Center of Southern Nevada, knew or should have been familiar with the practices of that facility and had a duty to ensure that the proper standards of care and policies and protocols were followed at that facility. These duties include, but are not limited to, ensuring proper management and handling of medical devices and medications in connection with the provision of medical care for patients undergoing endoscopic procedures at such a facility were followed and met. Alternatively, the referral to that facility should not have been made.

It is my opinion that the care and treatment rendered to Gwendolyn Martin at the Endoscopy Center of Southern Nevada fell below the standard of care and caused the

2

patient to contract Hepatitis C. It is further my opinion that Lisa Franks PA-C/Clifford Carrol, M.D. fell below the standard of care by referring this patient to the Endoscopy Center of Southern Nevada for an endoscopic procedure(s) as they knew or should have known of the deficient practices and violations of standard aseptic techniques practiced at that facility from 2004 through 2008. It is also my opinion, to a reasonable degree of medical probability that the aforementioned breaches in the standards of care, including the patient=s referral to the Endoscopy Center of Southern Nevada, caused and/or substantially contributed to the patient=s contraction of Hepatitis C.

All opinions set forth herein are stated to a reasonable degree of medical probability. I reserve the right to alter, modify and/or change the opinions expressed herein based upon receipt and review of additional information that may become available.

FURTHER, YOUR AFFIANT SAYETH NAUGHT.

THOMAS B. HARGRAVE, M.D.

SUBSCRIBED and SWORN to before me

on this _17th_ day of _February_ 2009.

NOTARY PUBLIC in and for said
COUNTY and STATE

TODD P. CONNORS
COMM. # 1780264
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
COMM. EXPIRES DEC. 14, 2011

3

## MedCURRICULUM VITAE

## THOMAS B. HARGRAVE III, M.D.

**Address:** East Bay Center for Digestive Health
3300 Webster St., Suite 312
Oakland, Calif. 94609     (510) 444-3297   Fax: (510) 444-6421

**Date of Birth:** 10/21/52

### Academic Training:

Premedical: Yale University 1971-1975; B.S. Degree Biology
Medical:    UCLA School of Medicine 1975-1979; M.D..
Internship: UC San Francisco; Internal Medicine; 1979-1980
Residency: UC San Francisco; Internal Medicine 1980-1982
Fellowship: UC San Francisco: Gastroenterology; 1983-1985

### Licensure:

California: # 00G445060
DEA Registration Through 2008
Certified: Am. Board Internal Medicine; September 15, 1982
Certified: Am. Board Int. Med., Gastroenterology; November 19, 1985

### Teaching Activities:

Assistant Clinical Professor of Medicine, UCSF Dept. Med., 1987-
Clinical Instructor UCSF-Berkeley Joint Medical Program, 1985-2007

### Awards:

Yale University:
Phi Beta Kappa 1974, 1975
Summa Cum Laude 1975
Distinction in the Major 1975
Edgar J. Boell Prize for Excellence in Biology 1975
Branford College Fellows Award (Highest Graduating GPA) 1975

UCLA Medical School:
Class President 1976-1978
Metro Goldwyn Mayer Scholarship 1975-1979
Franklin C. McClean Award: Academic Achievement 1979
UCLA Alumni Award: Medicine Dept. Academic Achievement 1979
UCLA Longmire Medal: Surgical Dept. Academic Achievement 1979
Alpha Omega Alpha Honor Medical Society 1978, 1979; Chapter President 1979

## CURRICULUM VITAE

## THOMAS B. HARGRAVE III, M.D.

### Medical Societies:

American Gastroenterological Association (AGA)
American Society of Gastrointestinal Endoscopy (ASGE)
California Medical Association (CMA)
Alameda Contra Costa Medical Society (ACCMA)
Northern California Society for Clinical Gastroenterology

### Hospital Affiliations:

Summit Medical Center, Oakland, Ca.: Active
Alta Bates Hospital, Berkeley, Ca.: Active
Merrithew Memorial Hospital, Martinez, Ca.: Provisional
Children's Hospital Oakland: Provisional Courtesy (Pediatric Biliary Procedures)
University of California, San Francisco: Teaching Associate

### Misc:

Chief of Gastroenterology, Summit Medical Center, 1992-1998
Chief of Gastroenterology, Hill Physicians Medical Group, 1994-2005
Member Board of Directors, Summit Medical Center, 1992-1994
Summit Medical Center Quality Assurance Committee, 1992-1998
Summit Medical Center Utilization Review Committee, 1992-1998
Summit Medical Center Pharmacy and Therapeutics Committee 1994-2001
Alameda Contra Costa Medical Society Liability Committee B, 1994-2000

# *EXHIBIT 3*

## AFFIDAVIT OF
## RICHARD SINGER, M.D.

1

2

3  STATE OF NEVADA )
                       )SS:
4  COUNTY OF CLARK )

5

6  **RICHARD A. SINGER, M.D.,** being first duly sworn under oath, deposes and says:

I am a medical doctor licensed to practice in the State of Nevada and have practiced in the

7

8  area of anesthesia for nearly forty (40) years. Attached hereto is a true and correct copy of my

curriculum vitae setting forth my education, training and experience as a physician.

9

I am familiar with the standards of care for certified registered nurse anesthetists and

10  anesthesiologists practicing at all times relevant to the care provided herein, including, but not

11  limited to, the time periods from March 2004 through and including January of 2008. I am also

12  familiar with the standards of care for the management and handling of medical devices and

13  medications in connection with the provision of anesthetic care for patients undergoing

14  gastroenterology endoscopic procedures and as a supervisor of those providing anesthesia

15  services to patients at all relevant times referenced herein.

16

I have had an opportunity to review portions of the medical records of Gwendolyn Martin

17  from the Endoscopy Center of Southern Nevada on Shadow Lane relating to Ms. Martin's

18  colonoscopy of September 20, 2007 and esophagogastroduodenoscopy (EGD) of September 21,

19  2007 performed at that facility. I have also reviewed copies of her blood test results confirming

20  her Hepatitis C virus infection, together with bulletins and deficiency reports from the Southern

21  Nevada Health District, Centers for Disease Control and Prevention and the State of Nevada

22  Department of Business and Licensure relating to its inspections and findings of the facility in

23  question. I have also reviewed the Physician Supervising Agreements between the

24  Gastroenterology Center of Nevada and Thomas Yee, M.D. dba Professional Anesthesia

25  Consultants dated April 1, 2002 and between the Gastroenterology Center of Nevada and Satish

26  Sharma, M.D., dated August 16, 2007.

27

The standards of care in connection with the provision of anesthesia services and the

28

1   management and handling of medical devices and medications mandates that strict sterile

2   technique be implemented and followed for all patients receiving intravenous anesthetic

3   medications. This includes, but is not limited to, utilizing aseptic technique by all health care

4   providers while providing all types of invasive medical care and properly using medical devices

5   and medications. It is the responsibility of the supervising physicians, including the supervising

6   anesthesiologist, to ensure strict aseptic techniques are followed by the CRNA and/or staff

7   assisting the CRNA in performing such services to the patient.

8          Failure of a certified registered nurse anesthetist and/or any other health care provider(s)

9   who may have provided anesthesia services, and/or who oversaw, implemented, approved or

10   failed to take action in response to the practices referenced respecting non-sterile anesthesia-

11   related practices and/or inappropriate uses of medication(s) and/or medical devices, falls below

12   the standard of care.

13          These violations of the standard of care, including the failure of Thomas Yee, M.D.,

14   Satish Sharma, M.D. and any other supervising anesthesiologist to properly monitor and

15   supervise the administration of anesthesia by a CRNA caused and/or substantially contributed to

16   Ms. Martin's contraction of Hepatitis C and possible exposure to other blood borne pathogens as

17   reported and reviewed by the governmental entities, including the Southern Nevada Health

18   District, Centers for Disease Control and Prevention and the State of Nevada Health Division

19   Bureau of Licensure and Certification.

20          It is my opinion to a reasonable degree of medical probability based upon my education,

21   training, experience, and review of previously described materials, that the defendants' conduct

22   in treating Ms. Martin and/or their failure to adequately supervise and/or ensure proper policies,

23   protocols, procedures and practices were in place and followed with respect to the administration

24   of anesthesia, fell below the standard of care and caused and/or substantially contributed to

25   causing this patient's contraction of Hepatitis C.

26   \\\

27   \\\

28   \\\

1    All opinions set forth herein are stated to a reasonable degree of medical probability. I

2    reserve the right to alter, modify and/or change the opinions expressed herein based upon receipt

3    and review of additional information that may become available.

4         FURTHER AFFIANT SAYETH NAUGHT.

5

6

7                                          RICHARD A. SINGER, M.D.

8

9    SUBSCRIBED and SWORN to before me
     on this 20th day of February, 2009.
10

11   
     NOTARY PUBLIC in and for said
12   COUNTY and STATE

13

14                    NOTARY PUBLIC
                County of Clark-State of Nevada
15                  MELISSA S. HANSEN
                      No. 08-8309—1
16           My Appointment Expires Oct. 22, 2012

17

18

19

20

21

22

23

24

25

26

27

28

# Curriculum Vitae
## Richard A. Singer, M.D.
3970 S McLeod Dr.
Las Vegas, Nevada 89052

**Personal**

| | |
|---|---|
| Date of Birth | December 1, 1939 |
| Social Security | ▮▮▮▮▮ |
| Place of Birth | Jersey City, NJ |

**Office Address**

2635 Box Canyon Dr.
Las Vegas, NV 89121

**Licensure**

Nevada #2612

**DEA**

#AS5441605

**State Pharmacy**

#CS01034

**Undergraduate Degree**
**(1961)**

Bachelor Science Major: Premedical
Washington & Jefferson College
Washington, Pennsylvania

**Medical Degree**
**(1965)**

New Jersey College of Medicine and Dentistry
Newark, NJ

**Internship**
07/01/65-06/30/66

Beth Israel Medical Center
New York NY

**Residency**
07/01/66-06/30/67

Beth Israel Medical Center
New York, NY

07/01/67-01/01/69    Obstetrical & Gynecology 1st , 2nd & 3rd Years
St Josephs Hospital, Phoenix Arizona

01/01/69-12/31/70

Maricopa County Hospital, Phoenix Arizona
Anesthesiology

Military Service
(1970-1971)
(1971-1972)

Fitzsimmons General Hospital, Denver, Colorado
Watson Army Hospital, Ft.Dix, New Jersey
Chief Anesthesiology

Activity Since Military
(1972-Present)

Private Practice of Anesthesiology
Las Vegas, Nevada

# *EXHIBIT 4*

## AFFIDAVIT OF
## GEORGE H. COX, BSN, MHS, CRNA

STATE OF NEVADA )
                  ) ss:
COUNTY OF CLARK )

I, George H. Cox, am a certified registered nurse anesthetist and have practiced in the area of anesthesia nursing for over twenty (20) years. Attached hereto as exhibit "1" is a true and correct copy of my curriculum vitae setting forth my education, training and experience as a nurse anesthetist.

I am familiar with the standards of care for certified registered nurse anesthetists practicing at all times relevant to the care provided herein, including, but not limited to, the time periods from March 2004 through and including January of 2008. I am also familiar with the standards of care for the management and handling of medical devices and medications in connection with the provision of anesthetic care for patients undergoing gastroenterology endoscopic procedures at all relevant times referenced herein.

I have had an opportunity to review portions of the medical records of Gwendolyn Martin from the Endoscopy Center of Southern Nevada on Shadow Lane relating to Ms. Martin's colonoscopy of September 20, 2007 and EGD (esophagogastroduodenoscopy) of September 21, 2007 performed at that facility. I have also reviewed copies of her blood test results confirming her diagnosis of acute Hepatitis C, genotype 1a, together with bulletins from the Southern Nevada Health District and Centers for Disease Control and Prevention relating to its inspections and findings of the facility in question.

The standards of care in connection with the provision of anesthesia services and the management and handling of medical devices and medications mandates that strict sterile technique be implemented and followed for all patients receiving intravenous anesthetic medications. This includes, but is not limited to, utilizing aseptic technique by all health care providers while providing all types of invasive medical care and properly using medical devices and medications.

1

2      Failure of a certified registered nurse anesthetist and/or any other health care provider(s)

3  who may have provided anesthesia services, and/or who oversaw, implemented, approved or

4  failed to take action in response to the practices referenced respecting non-sterile anesthesia-

5  related practices and/or inappropriate uses of medication(s) and/or medical devices, falls below

6  the standard of care.

7      These violations of the standard of care caused and/or substantially contributed to the

8  patient's contraction of Hepatitis C and possible exposure to other blood borne pathogens as

9  reported and reviewed by the governmental entities, including the Southern Nevada Health

10  District and Centers for Disease Control and Prevention.

11      All opinions set forth herein are stated to a reasonable degree of nursing probability. I

12  reserve the right to alter, modify and/or change the opinions expressed herein based upon receipt

13  and review of additional information that may become available.

14

15  FURTHER AFFIANT SAYETH NAUGHT.

16

17

18                          GEORGE H. COX, BSN, MHS, CRNA

19

20  SUBSCRIBED and SWORN to before me

21  on this 28 day of _April_, 2008.

22

23  NOTARY PUBLIC in and for said
    COUNTY and STATE



NOTARY PUBLIC
County of Clark-State of Nevada
SONJA K. MOORE
No. 98-5173-1
My Appointment Expires Feb. 25, 2011

24

25

26

27

28

# CURRICULUM VITAE

*NAME:* GEORGE H COX

*BUSINESS ADDRESS:* 8846 Zurich Court
                    Las Vegas, Nevada 89147-8100

*E - MAIL ADDRESS:* GHCAPNC@AOL.COM

*BUSINESS:* 702-280-7699          *HOME:* 702-227-3072          *TELEFAX:* 702-227-3071

*LICENSURE:*  Nevada Registered Nurse 2001 - EXP. 01/09
             Nevada Certified Registered Nurse Anesthetist 2001 - EXP  01/09
             American Association of Nurse Anesthetists 1989 - EXP  07/09
             California Registered Nurse 1982 - Inactive
             Kansas Registered Nurse 1993 - Inactive
             Kansas Advanced Practice Nurse 1993 - Inactive
             Kansas Certified Registered Nurse Anesthetist 1993 - Inactive
             Arkansas Registered Nurse 1998 - Inactive
             Arkansas Advanced Practice Nurse 1998 - Inactive
             Missouri Registered Nurse 2001 - Inactive

*ADVANCED LIFE SUPPORT CERTIFICATES:*  Basic Cardiac Life Support (BCLS-Current)
                                       Advanced Cardiac Life Support (ACLS-Current)
                                       Pediatric Advanced Life Support (PALS)
                                       Neonatal Advanced Life Support (NALS)
                                       Advanced Trauma Life Support (ATLS)

*CERTIFICATIONS:*  American Association of Critical Care Nurses
                   Certified Critical Care Nurse (CCRN) - 1984

                   Emergency Department Nurses' Association
                   Certified Emergency Nurse (CEN) - 1984

                   American Association of Nurse Anesthetists
                   Certified Registered Nurse Anesthetist (CRNA) - 1988

                   National Alliance of Certified Legal Nurse Consultants
                   Certified Legal Nurse Consultant (CLNC) - 2004

                   United States of America
                   Department of Transportation
                   Federal Aviation Administration
                   Certificated Flight Instructor (CFI) - 1998

*AREAS OF SPECIALIZATION:* Certified Registered Nurse Anesthetist
Advanced Registered Nurse Practitioner
Legal Nurse Consultant (Pre-Litigation and Litigation Support)
Executive Nurse Administration (Outpatient Surgery)
Nursing Education (Anesthesiology Nursing & Life Support)
Critical Care Nursing (Coronary Care and Trauma)
Emergency Nursing

## *EDUCATION:*

CIVILIAN:   Hendrick Memorial Hospital
School of Vocational Nursing
Abilene, Texas 79601
1977 - Diploma

California State University, Fresno
College of Nursing
Fresno, California 93740
Bachelor of Science in Nursing
*Magna Cum Laude* - 1983

Texas Wesleyan University
Fort Worth, Texas 76105
Master of Health Science in Nurse Anesthesiology
*Distinguished Honor Graduate* - 1987

MILITARY:   AMEDD Officer Basic Course
Academy of Health Sciences, US Army
Fort Sam Houston, Texas - 1984

AMEDD Officer Advanced Course
Academy of Health Sciences, US Army
Fort Sam Houston, Texas - 1986

Anesthesiology for ANC Officers (6F-66F)
Academy of Health Sciences, US Army
Fort Sam Houston, Texas 78234
William Beaumont Army Medical Center
El Paso, Texas - 1988

US Army Combined Arms and Services Staff School
US Army Command and General Staff College
Fort Leavenworth, Kansas - 1990

Medical Management of Chemical Casualties Course (M2C3)
US Army Medical Research Institute of Chemical Defense
Tripler Army Medical Center
Honolulu, Hawaii - 1991

Medical Effects of Nuclear Weapons
Armed Forces Radiobiology Research Institute
Tripler Army Medical Center
Honolulu, Hawaii - 1991

II

_PROFESSIONAL_ _EXPERIENCE_: Green Valley Anesthesia Services, LLC
P. O. Box 400325
Las Vegas, Nevada 89140-0325
Senior and Managing Partner - June 2005 -- Present

Southern Nevada Professional Legal Nurse Consultants, LLC
8845 Zurich Court
Las Vegas, Nevada 89147-8100
President, Consultant - April 2004 -- Present

Las Vegas Regional Surgery Center, LP
3560 East Flamingo Road, Suite 105
Las Vegas, Nevada 89121-5000
Executive Nurse Administrator (Temporary Position)
90 Day Position -- Employed to Set-Up and Open Facility
01 May 2007 -- 30 July 2007

Endoscopic Institute of Nevada
3777 Pecos McLeod, Suite 102
Las Vegas, Nevada 89121
Director of Nursing, Medical Records and On-Site Pharmacy
(21 January 2002 -- 17 August 2004)
Chief Nurse Anesthetist (21 January 2002 -- 07 June 2005)

Medical Doctor Associates, Inc
145 Technology Parkway, NW
Norcross, Georgia 30092
03 January 2000 -- 05 December 2001
Providing services for the following clients.

> Amarillo VA Medical Center
> 6010 Amarillo Blvd., West
> Amarillo, Texas 79106
> 30 August 2000 - 05 December 2001

> Overton Brooks VA Medical Center
> 510 East Stoner Avenue
> Shreveport, Louisiana 71101-4295
> 03 January 2000 - 24 August 2000

Independent Contractor
Medical Park Hospital
2001 Main Street
Hope, AR 71801
28 December 1998 - 31 December 1999

United Anesthesia Associates, Incorporated
P.O. Box 1847
Kernersville, North Carolina 27285
23 March 1997 - 17 November 1998
Providing services for the following clients

> Wichita Anesthesiology, Charlered
> Saint Francis Medical Center
> Columbia Wesley Medical Center
> Wichita, Kansas 67218

*Mid - Continent Anesthesiology*
Southwest Medical Center
Liberal, Kansas 67901

*Saint Francis Hospital and Medical Center*
1700 West Seventh Street
Topeka, Kansas 66606

*Central Kansas Medical Center*
3515 Broadway Street
Great Bend, Kansas 67530

Obstetric Anesthesia / Analgesia Service
Anesthesia Nursing Section
*Irwin Army Community Hospital*
Fort Riley, Kansas 66442-5037
01 January 1994 - 28 February 1997

*Independent Private Practice*
Anesthesia and Acute Pain Management
Manhattan, Kansas 66502-2840
10 July 1993 - 31 December 1996

Staff Nurse Anesthetist
Anesthesia Nursing Section
*Irwin Army Community Hospital*
Fort Riley, Kansas 66442-5037
11 September 1992 - 10 September 1993

Staff Nurse Anesthetist
Adjunct Clinical Faculty, *US Army/Texas*
*Wesleyan University Program in*
*Anesthesia Nursing*
Tripler AMC, Hawaii 96859-5000
20 December 1990 - 27 July 1992

Staff Nurse Anesthetist
*Joint US Task Force Medical Element*
*Joint Task Force - Bravo*
Solo Cano Air Base, Honduras
APO Miami, FL 34042
25 June 1990 - 19 December 1990

Staff Nurse Anesthetist
Adjunct Clinical Faculty, *US Army/Texas*
*Wesleyan University Program in*
*Anesthesia Nursing*
Anesthesia Nursing Section
Tripler AMC, Hawaii 96859-5000
06 January 1989 - 24 June 1990

Clinical Staff Nurse
Critical Care Nursing Section
*William Beaumont Army Medical Center*
El Paso, Texas 79920-5000
March 1984 - September 1986

IV

Clinical Staff Nurse III
Critical Care Nursing Section
*Madera Community Hospital*
Madera, California 93639
January 1981 - January 1984

*OTHER WORK EXPERIENCE:* Self-Employed - *Cox Flight Services*
Certificated Flight Instructor
Primary and Advanced Flight Instruction
Instrument and Commercial Pilot Ratings
Hope, Arkansas 71802
Manhattan, Kansas 66503
December 1998 - July 2001

*TEACHING EXPERIENCE:* Advanced Cardiac Life Support Instructor
American Heart Association
California, Texas, Hawaii, Kansas and Nevada Affiliates
June 1983 - November 2003

Adjunct Clinical Faculty, US Army / Texas
Wesleyan University Program in
Anesthesia Nursing
Anesthesia Nursing Section
Tripler AMC, Honolulu, Hawaii 96859-5000
06 January 1989 - 27 July 1992

Certificated Flight Instructor
Primary and Advanced Flight Instruction
Instrument and Commercial Pilot Ratings
Hope, Arkansas 71802
Manhattan, Kansas 66503
December 1998 - July 2001

## *AFFILIATIONS AND PROFESSIONAL ORGANIZATIONS:*

American Association of Critical Care Nurses
Member – 1983

Emergency Department Nurses' Association
Member – 1983

American Association of Nurse Anesthetists
Associate Member – 1986;   Member – 1988

Texas Association of Nurse Anesthetists
Member – 1986

Hawaii Association of Nurse Anesthetists
Member – 1989; Public Relations Committee – 1990

Kansas Association of Nurse Anesthetists
Member – 1994

v

Nevada Association of Nurse Anesthetists
Member – 2003

National Alliance of Certified Legal Nurse Consultants
Member – 2004

American Association of Legal Nurse Consultants
Member – 2004

*APPOINTMENTS:*  Advanced Practice Advisory Committee
Nevada State Board of Nursing, Reno, Nevada
Appointed May 2004; Re-appointed May 2007

## DECORATIONS AND AWARDS:

CIVILIAN:  Elected to the *National Honor Society of Phi Kappa Phi* - 1983

*Agatha Hodgins CRNA Memorial Award* - 1988
Presented annually by Janssen Pharmaceutica to the Outstanding
Graduate Registered Nurse Anesthetist

MILITARY:  National Defense Service Ribbon - 1971, 1991

Army Overseas Ribbon - 1991

Army Service Ribbon - 1984

Army Achievement Medal - 1986, 1988

Army Commendation Medal - 1987, 1993

Joint Services Achievement Medal - 1990

Meritorious Service Medal - 1992

Distinguished Honor Graduate
Anesthesiology for Army Nurse Corps Officers - 1987

*PROFESSIONAL PRESENTATIONS:*  *Clinical Correlations in Anesthesia Practice for Patients*
*with Cardiovascular Pathophysiology*
US Army / Texas Wesleyan University Program
in Anesthesia Nursing, Phase II
Nursing Education and Staff Development
Tripler Army Medical Center, Hawaii  96859-5000
1989, 1990, 1991

*Mechanical Ventilatory Support for the Chemical Casualty*
Medical Management of Chemical Casualties Course
US Army Medical Research Institute of Chemical Defense
Given at the Defense Nuclear Agency, Johnston Atoll
APO San Francisco, CA  96305
20 - 22 January 1992

VI

Case 2:10-cv-00161-KJD-LRL Document 1-3 Filed 02/05/10 Page 58 of 68

_PROFESSIONAL PROJECTS / PUBLICATIONS:_

Cox, G. H. (2005) _BREAKING THE CODE – Demystifying the Clinical Anesthesia Record._ LNC Resource, 2(7), 1, 16-17

Cox, G. H. (2006) _AWARENESS AND RECALL DURING GENERAL ANESTHESIA – A New Focus For Both Medical and Legal Professionals._ LNC Resource, 3(3), 17, 23, 27, 29

Authored the 2004 revision(s) to the Nevada State Board of Nursing _Nurse Practice Act,_ Nevada Administrative Code, Chapter 632, Sections 632 500 through 632.550, _Certified Registered Nurse Anesthetists_

As a consultant, rendered an expert opinion for a Federal Health Care Facility during external professional peer review proceedings involving a Certified Registered Nurse Anesthetist, alleging professional misconduct and breech of Standards of Care

As a consultant, appeared as an expert witness and served as a primary committee member during a Root Cause Analysis Investigation of an intraoperative operating room fire with subsequent patient injury at a Federal Health Care Facility

As a consultant, rendered an expert opinion for the Nevada State Board of Nursing during an external professional peer review proceeding involving a Certified Registered Nurse Anesthetist, alleging professional misconduct and breech of Standards of Care

As a consultant, appeared as an expert witness for the Nevada State Board of Nursing during Administrative Court proceedings involving a Certified Registered Nurse Anesthetist, alleging professional misconduct and breech of Standards of Care

Currently developing and implementing the _Anesthesia Care Team Crew Resource Management Training Program_ (ACTCRMTP). This is a crew resource management-based training program designed to improve the attitudes and enhance the effectiveness and safety of the multidisciplinary practitioners practicing as Anesthesia Care Team members. The target date for initial implementation of this program is August 2008.

_CURRENT EDUCATIONAL PURSUIT:_

Doctoral Student, Rush University College of Nursing, Chicago, Illinois; leading to the Doctor of Nursing Practice degree (DNP); anticipated graduation date, December 2008

# *EXHIBIT 5*

1

2

## AFFIDAVIT OF
## DANA SUTTER, R.N.

3

4    STATE OF NEVADA          )
                              ) ss:
5    COUNTY OF CLARK          )

6          I, Dana Sutter, am a registered nurse and have practiced in the area of nursing for over

7    thirteen (13) years.  Attached hereto as exhibit "1" is a true and correct copy of my curriculum

8    vitae setting forth my education, training and experience as a registered nurse.

9          I am familiar with the standards of care for a registered nurse practicing at all times

10   relevant to the care provided herein, including, but not limited to, the time periods from March

11   2004 through and including January of 2008.  I am also familiar with the standards of care for the

12   management and handling of medical devices and medications in connection with the provision

13   of anesthetic care for patients undergoing gastroenterology endoscopic procedures at all relevant

14   times referenced herein in my role as a circulating nurse.

15         I have had an opportunity to review relevant portions of the medical records of

16   Gwendolyn Martin from the Endoscopy Center of Southern Nevada on Shadow Lane relating to

17   Ms. Martin's colonoscopy of September 20, 2007 and EGD (esophagogastroduodenoscopy) of

18   September 21, 2007 performed at that facility.  I have also reviewed copies of her blood test

19   results confirming her diagnosis of acute Hepatitis C, genotype 1a, together with bulletins from

20   the Southern Nevada Health District and Centers for Disease Control and Prevention relating to

21   its inspections and findings of the facility in question.

22         The standards of care in connection with the provision of anesthesia services and the

23   management and handling of medical devices and medications mandates that strict sterile

24   technique be implemented and followed for all patients receiving intravenous anesthetic

25   medications.  This includes, but is not limited to, utilizing aseptic technique by all health care

26   providers while providing all types of invasive medical care and properly using medical devices

27   and medications.

28         Failure of a registered nurse and/or any other health care provider(s) who participated,

1    oversaw, implemented, approved or failed to take action in response to the practices referenced

2    respecting non-sterile anesthesia-related practices and/or inappropriate uses of medication(s)

3    and/or medical devices, falls below the standard of care.

4         All opinions set forth herein are stated to a reasonable degree of nursing probability. I

5    reserve the right to alter, modify and/or change the opinions expressed herein based upon receipt

6    and review of additional information that may become available.

7

8    FURTHER AFFIANT SAYETH NAUGHT.

9

10                                                                      R.N

11                                              DANA SUTTER, R.N.

12

13   SUBSCRIBED and SWORN to before me

     on this ___ day of _____, 2008.          NOTARY PUBLIC
14                                                County of Clark-State of Nevada
                                                  SONJA K. MOORE
15                                                  No. 98-5173-1
     NOTARY PUBLIC in and for said            My Appointment Expires Feb. 26, 2011
16   COUNTY and STATE

17

18

19

20

21

22

23

24

25

26

27

28

# Dana N. Sutter

2104 Spencer SL, Las Vegas, NV. 89104 • 702-869-9609 • Cell- 323-270-2154 • Email- dnsutter@cox.net

## Professional Qualifications

- 13 years Experience as a Registered Nurse
- 11 years Experience in the Operating Room
- Management Skills
- Information Technology Skills
- Knowledge of HSM, Vision and PHS programs for scheduling

## Professional Licenses & Accreditations

- Registered Nurse Licensure in the following states: Nevada, California, Washington, Hawaii, New York, Michigan, Missouri, Pennsylvania and Washington DC.
- Certificate in Advanced Cardiac Life Support (ACLS)
- Certificate of Basic Life Support (BLS)
- Member of AORN

## Education

| | |
|---|---|
| 1983-1987 | Westlake High School, Westlake, CA.<br>Diploma |
| 1989-1995 | City College of San Francisco, San Francisco, CA.<br>Major in Nursing<br>Associates Degree of Nursing |
| Nov. 1997<br>to<br>Feb. 1997 | Tarzana Regional Medical Center, Tarzana, CA.<br>Perioperative training program<br>Certificate of Perioperative Nursing |

## Employment History

July 2007-
Present
Las Vegas Regional Surgery Center, Las Vegas, NV
*Director of Nursing, RN circulator*
Responsible for directing and supervising nursing and ancillary personnel in planning, implementing, monitoring and evaluating patient care in the operating room according to accepted standards. Participate in the recruitment, interviewing, selection and the hiring of department employees. Demonstrates effective communication skill with staff, management, physician and patient/families. Responsible for maintaining Policies and Procedures Manual, Anesthesia and Surgeon Peer Reviews, Quarterly Reports, Infection Control Program, Environmental Safety Programs, Patient Satisfaction Surveys and Annual Inservices. Attends monthly Governing Body Meetings to discuss Quality Improvement for the facility. I have a staff of 7 RNs, 4 Surgical Techs, 1 Medical Assistant and 1 Office Manager. I also work in the role as circulator when necessary and

In any other areas of the ASC as needed. We do a variety of cases including: Endoscopy, Plastics, Bariatrics, Orhtopedic and Pain Management.

Nov. 1997-
Present         Tarzana Regional Medical Center, Tarzana, CA
                RN, scrub and circulate role
                Organized surgical setting to allow for a safe physical environment and protection of patient. Patient advocate, independent in decision making, handled emergency situations with rigor and responsibility. Specializing in Neurosurgery, Orthopedic, Laparoscopic, Urology and General surgeries.

April 2003-
Present         North Vista Hospital, Las Vegas, NV.
                Charge RN/ circulator
                Responsible for preparing and conducting annual nursing competencies. Ability to oversee staff, run surgical schedule, assist surgeons with cases and any problems. As a circulator specialized in Spine, Orthopedic, Bariatric and Endoscopy. I am able to perform independently in all areas and surgical procedures and make appropriate decisions in nursing care.

October 2004-
April 2007      Valley Hospital, Las Vegas, NV.
                Per Diem circulating RN and scrub
                Assist the surgical team and provide patient care during the surgical procedure. Work on an as needed basis in all areas of surgical setting.

1999-
present         Traveling RN at these hospitals:
                Desert Springs Hospital, Las Vegas, NV. 1999
                Good Shepard Hospital, Barringoln, IL. 1999
                Cedar Sinai, Los Angeles, CA. 2000
                Kaiser Hospital, Oakland, CA. 2000
                Sunrise Hospital, Las Vegas, NV. 2001
                Washington Hospital Center, Washington DC, 2001
                Mercy Hospital, Bakersfield, CA. 2002
                Saint Catherines Hospital, Smithtown, NY. 2002
                Long Beach Memorial, Long Beach, CA. 2003
                St. Lukes Hospital, NYC, NY. 2003
                Lourdes Medical Center, Cherry Hill, NJ. 2004
                Ingham Medical Center, Lansing, MI. 2005
                Sharp Memorial, San Diego, CA 2006
                Sutter Hospital, Antioch, CA 2007

                As a travelling nurse in the OR I was able to adapt quickly to new environments and function independently. Worked comfortably with co-workers and surgeons, while maintaining a professional demeanor. Responsible for both technical and behavioral nursing duties in the surgical setting. Did a variety of surgeries in a multitude of settings, while always maintaining patient safety and privacy.

*References available upon request*

# EXHIBIT 6

## AFFIDAVIT OF
## DANA SUTTER, R.N.

STATE OF NEVADA )
                ) ss:
COUNTY OF CLARK )

I, Dana Sutter, am a registered nurse and have practiced in the area of nursing for over thirteen (13) years. Attached hereto as exhibit "1" is a true and correct copy of my curriculum vitae setting forth my education, training and experience as a registered nurse. I am currently the director of nursing for an outpatient ambulatory surgical center and have, at all times relevant herein, had experience in supervising nursing care applicable to the nursing care provided in this matter, including but not limited to nursing care provided to patients respecting endoscopic procedures in an outpatient setting.

This affidavit is an addendum to my affidavit previously submitted regarding Gwendolyn Martin and is meant to be incorporated by reference as though fully set forth therein. I have reviewed those items referenced in my original affidavit as well as a copy of the State of Nevada. Bureau of Licensure and Certification relating to deficiencies and plans of correction for the Endoscopy Center of Southern Nevada on Shadow Lane and Burnham Avenue.

It is my opinion, to a reasonable degree of nursing probability, that any nurse, including but not limited to, Kathleen Maley, R.N , Jeff Krueger, R.N., and any other nurse who had a supervisory role at the Endoscopy Center of Southern Nevada between March 2004 through and including January of 2008, had a duty to ensure that proper policies and protocols were in place with respect to nursing care, including maintenance of aseptic technique in the management and handling of medical devices and medications. It is further my opinion, to a reasonable degree of medical probability, that any nurse who had a supervisory role at the Endoscopy Center of Southern Nevada had a duty to ensure the nursing care and treatment provided to patients, including Gwendolyn Martin, were within the standards of care and that all applicable policies and procedures were implemented and followed by nursing staff.

It is further my opinion, to a reasonable degree of nursing probability, that the supervising

1 nursing staff, including but not limited to, Kathleen Maley, R.N. and Jeff Krueger, R.N., breached

2 the standards of care in failing to adequately supervise the nursing staff and ensure proper policies

3 and protocols for nursing care were implemented and followed. Specifically, the standard of care

4 mandates that all nursing supervisors ensure nursing staff utilizes and follows strict sterile

5 technique for all patients receiving intravenous anesthetic medications. This includes, but is not

6 limited to, utilizing aseptic technique by all nursing staff while providing or assisting in all types

7 of invasive medical care and properly using medical devices and medications.

8      Failure of a registered nurse and/or any other health care provider(s) to adequately

9 supervise, oversee, implement, and/or to take action in response to the practices referenced

10 respecting non-sterile anesthesia-related practices and/or inappropriate uses of medication(s)

11 and/or medical devices by nursing staff falls below the standard of care.

12      All opinions set forth herein are stated to a reasonable degree of nursing probability. I

13 reserve the right to alter, modify and/or change the opinions expressed herein based upon receipt

14 and review of additional information that may become available.

15

16      FURTHER AFFIANT SAYETH NAUGHT.

17

18                                      R.N.

                                DANA SUTTER, R.N.

19

20 SUBSCRIBED and SWORN to before me

21 on this 12th day of February, 2009.

22

23

NOTARY PUBLIC in and/for said

24 COUNTY and STATE

25



26 NOTARY PUBLIC
County of Clark-State of Nevada
MELISSA S. HANSEN
27 No. 08-8309—1
My Appointment Expires Oct. 22, 2012

28

# Dana N. Sutter

2104 Spencer St., Las Vegas, NV. 89104 • 702-869-9609 • Cell- 323-270-2154 • Email- dnsutter@cox.net

## Professional Qualifications

- 13 years Experience as a Registered Nurse
- 11 years Experience in the Operating Room
- Management Skills
- Information Technology Skills
- Knowledge of HSM, Vision and PHS programs for scheduling

## Professional Licenses & Accreditations

- Registered Nurse Licensure in the following states: Nevada, California, Washington, Hawaii, New York, Michigan, Missouri, Pennsylvania and Washington DC.
- Certificate in Advanced Cardiac Life Support (ACLS)
- Certificate of Basic Life Support (BLS)
- Member of AORN

## Education

1983-1987     Westlake High School, Westlake, CA.
              Diploma

1989-1995     City College of San Francisco, San Francisco, CA.
              Major in Nursing
              Associates Degree of Nursing

Nov. 1997
to
Feb. 1997     Tarzana Regional Medical Center, Tarzana, CA.
              Perioperative training program
              Certificate of Perioperative Nursing

## Employment History

July 2007–
Present        Las Vegas Regional Surgery Center, Las Vegas, NV
               *Director of Nursing, RN circulator*
               Responsible for directing and supervising nursing and ancillary personnel
               in planning, implementing, monitoring and evaluating patient care in the
               operating room according to accepted standards. Participate in the
               recruitment, interviewing, selection and the hiring of department
               employees. Demonstrates effective communication skill with staff,
               management, physician and patient/families. Responsible for maintaining
               Policies and Procedures Manual, Anesthesia and Surgeon Peer Reviews,
               Quarterly Reports, Infection Control Program, Environmental Safety
               Programs, Patient Satisfaction Surveys and Annual Inservices. Attends
               monthly Governing Body Meetings to discuss Quality Improvement for the
               facility. I have a staff of 7 RNs, 4 Surgical Techs, 1 Medical Assistant and
               1 Office Manager. I also work in the role as circulator when necessary and

in any other areas of the ASC as needed. We do a variety of cases including: Endoscopy, Plastics, Bariatrics, Orhtopedic and Pain Management.

Nov. 1997-
Present

Tarzana Regional Medical Center, Tarzana, CA
*RN, scrub and circulate role*
Organized surgical setting to allow for a safe physical environment and protection of patient. Patient advocate, independent in decision making, handled emergency situations with rigor and responsibility. Specializing in Neurosurgery, Orthopedic, Laparoscopic, Urology and General surgeries.

April 2003-
Present

North Vista Hospital, Las Vegas, NV.
*Charge RN/ circulator*
Responsible for preparing and conducting annual nursing competencies. Ability to oversee staff, run surgical schedule, assist surgeons with cases and any problems. As a circulator specialized in Spine, Orthopedic, Bariatric and Endoscopy. I am able to perform independently in all areas and surgical procedures and make appropriate decisions in nursing care.

October 2004-
April 2007

Valley Hospital, Las Vegas, NV.
*Per Diem circulating RN and scrub*
Assist the surgical team and provide patient care during the surgical procedure. Work on an as needed basis in all areas of surgical setting.

1999-
present

Traveling RN at these hospitals:
Desert Springs Hospital, Las Vegas, NV. 1999
Good Shepard Hospital, Barringotn, IL. 1999
Cedar Sinai, Los Angeles, CA. 2000
Kaiser Hospital, Oakland, CA. 2000
Sunrise Hospital, Las Vegas, NV. 2001
Washington Hospital Center, Washington DC, 2001
Mercy Hospital, Bakersfield, CA. 2002
Saint Catherines Hospital, Smithtown, NY. 2002
Long Beach Memorial, Long Beach, CA. 2003
St. Lukes Hospital, NYC, NY. 2003
Lourdes Medical Center, Cherry Hill, NJ. 2004
Ingham Medical Center, Lansing, MI. 2005
Sharp Memorial, San Diego, CA 2006
Sutter Hospital, Antioch, CA 2007

As a traveling nurse in the OR I was able to adapt quickly to new environments and function independently. Worked comfortably with co-workers and surgeons, while maintaining a professional demeanor. Responsible for both technical and behavioral nursing duties in the surgical setting. Did a variety of surgeries in a multitude of settings, while always maintaining patient safety and privacy.

*References available upon request*